UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00562-CRS


**THOMAS E. PEREZ**                                                                    **PLAINTIFF**


**V.**


**KDE EQUINE, LLC and**
**STEVE ASMUSSEM**                                                                     **DEFENDANTS**


<u>**MEMORANDUM, OPINION,**</u>
<u>**AND ORDER**</u>

Before the Court is the motion of Plaintiff Thomas E. Perez, Secretary of Labor of the

United States Department of Labor ("Secretary"), to compel discovery responses from Defendants

KDE Equine, LLC and Steve Asmussen (collectively referred to as "Defendants"). (DN 31).

Defendants have filed a response in opposition. (DN 34).   The Secretary has objected to

Defendant's filing of Attachment 3 to their response.   (DN 35).   Defendants urge the Court to

overrule this objection. (DN 36).   The time for the Secretary to file a reply to their motion to

compel has expired.   These matters are ripe for review.


<u>I. Background</u>

The Secretary of Labor brings this action against Defendants KDE Equine and Steve

Asmussen, alleging that, since June of 2012, Defendants have violated provisions of the Fair Labor

Standards Act ("FLSA"). (DN 1, at p. 4).   The Secretary first pleads that, since June of 2012,

Defendants have violated Sections 7 and 15(a)(2) of the FLSA by engaging Churchill Downs

employees, working as hot walkers and/or grooms, for workweeks longer than 40 hours without compensating said employees for overtime pay at one and one-half times their regular pay rate. (Id. at pp. 4-5).   The Secretary also contends Defendants have repeatedly violated Sections 11(c) and 15(a)(5) of the FLSA by failing to "make, keep and preserve adequate and accurate records" of the aforementioned employees and of the wages, hours, and other conditions of employment maintained by Defendants. (Id. at p. 5).   Defendants altogether deny these allegations. (DN 10).

Discovery in this case has been contentious.   On December 2, 2015, the Secretary propounded his "First Set of Interrogatories," "First Set of Requests for Admission," and "First Set of Requests for the Production of Documents" to Defendants. (DN 31-3).   Within the 30-day deadline period, Defendants responded to each of the Secretary's three discovery requests.   (DN 31-4; DN 31-5; DN 31-6).

Almost one month later, the parties engaged in mediation before the Court, which was unsuccessful.   The Settlement Conference Report ordered the parties to "exchange letter requests for documents" within seven days and "produce the requested documents to each other" within 20 days.   (DN 25).   Defendants timely responded to the Secretary's letter, submitting 1,539 pages of documents marked "Privileged and Confidential – Settlement Communication."   (DN 41-1, at p. 2; DN 34, at p. 2).

The Court held a telephonic status conference on March 29, 2016, ordering Defendants to provide the Secretary with "the requested information regarding 'hot walkers' and 'grooms', and support for employees claimed to be exempt" by no later than April 15, 2016. (DN 27). Defendants again timely responded to the Court's order and again marked the responsive

documents as "Privileged and Confidential – Settlement Communication." (DN 31-1, at p. 3; DN 34, at p. 2).

The parties attended a second mediation before the Court on May 18, 2016; no settlement was reached. (DN 28).   On June 22, 2016, the Secretary sent Defendants a nine-page letter setting forth numerous purported deficiencies in the Defendants' discovery responses. (DN 31-7).   The Secretary requested Defendants respond by July 11, 2016. (DN 31-7, at p. 9).   After Defendants missed that deadline, the Secretary inquired of Defendants when he could expect a response, to which Defendants indicated "soon." (Id.).   The Secretary stated he looked forward to the Defendants' response by August 4, 2016.   (Id.).

One day after the "new" response deadline passed, the Secretary filed the instant motion to compel, stating "[a]s of today's date, defendants still have not responded." (Id.).   Defendants emphatically disagree with this statement, explaining that they responded to the Secretary's June 22, 2016 letter on August 4, 2016.   (DN 34, at p. 3).   Their response, Defendants clarify, was served by mail on the agreed upon August 4, 2016 date, but, through oversight, the response letter was not transmitted by e-mail to the Secretary until 8:11 a.m. on August 5, 2016. (Id.). Defendants submit that this motion could have been avoided had the Secretary allowed time for Defendants' response to be delivered and given a fair reading to their response.   (Id. at p. 4).   The Secretary certifies, under Rule 37(a)(1), that he worked in good faith to confer with Defendants to obtain relief without court action, but Defendants were unresponsive.   (DN 31, at pp. 2-3).

## II. Motion to Compel

The Secretary's motion to compel, by incorporating its June 22, 2016 letter, argues Defendants' discovery responses were deficient in three respects.[1]   First, Defendants provided evasive or incomplete answers for Interrogatory Nos. 2, 3, 4, 5, 6, 7, 13, 14, 15, and 18.   Second, Defendants failed to produce documents or allow for the inspection of documents responsive to Requests for Production Nos. 14 and 19.   Third, Defendants answers and objections to Requests for Admission Nos. 1, 4, 5, 7, 8, 9, and 10 are insufficient.   The Secretary broadly seeks "full and complete responses" to his written discovery requests.   (DN 31-1, at p. 7).

Trial courts have wide discretion in dealing with discovery matters.   *See* S.S. v. E. Ky. Univ., 532 F.3d 445, 451 (6th Cir. 2008); Chrysler Corp. v. Fedders Corp., 643 F.3d 1229, 1240 (6th Cir. 1981).   The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"   Fed.R.Civ.P. 26(b)(1).   Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted).   In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the

[1] Defendants' response asserts that the Secretary's motion to compel merely discusses the procedural posture of the discovery dispute and sets forth the provisions of the Federal Rules pertaining to discovery but fails to provide any "substantive support for the ensuing allegations." (DN 34, at p. 4).    Defendants criticize the Secretary's "reference" to his June 22, 2016 letter, stating it "requires the Court to search through the nine-page letter for any possible support for the ill-founded *Motion*."   (Id. at p. 5).   While it is not ideal to search through the June 22, 2016 letter in an Attachment to the Secretary's motion to compel, the Court finds the Secretary's referencing the letter as an Attachment is sufficient.

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34."   Fed.R.Civ.P. 37(a)(3)(iii), (iv). Under Rule 37, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."   Fed.R.Civ.P. 37(a)(4).   The party seeking discovery bears the burden of proving that a discovery response is inadequate.   Equal Rights Center v. Post Props., Inc., 246 F.R.D. 29, 32 (D.D.C. 2007).

## A. Interrogatories

Throughout their responses to the Secretary's interrogatories Defendants made repeated objections to the numerosity of the interrogatories and Defendants' claims that they adequately responded through Rule 33(d) productions.[2]   The Secretary argues against these objections in his motion to compel. (DN 31-7, at p. 2, 4; DN 31-1, at p. 6).   The Court will address these broad objections before evaluating the sufficiency of Defendants' individual interrogatory answers challenged by the Secretary.

## Numerosity of Interrogatories

In responding to the Secretary's Interrogatory Nos. 2 and 3, and all further interrogatories, the Defendants objected to the numerosity of the subparts, claiming they contain "no fewer than 600 interrogatories," far exceeding the number allowed under the Federal Rules. (DN 31-4, at p. 3,

---

2 Defendants also repeatedly objected to the Secretary seeking information about employees who have not been employed by KDE at Churchill Downs or within the State of Kentucky as overly broad and unduly burdensome. (*See* DN 31-4, at p. 4).   In his motion to compel, however, the Secretary agreed to limit the scope of his interrogatories and document requests to "employees within the Commonwealth of Kentucky who performed services as hot walkers, grooms, and 'exercise riders.'" (DN 31-7, at p. 3).

5).  This excessiveness of interrogatories, according to Defendants, is "patently disallowed under the Federal Rules" and is also overly broad and unduly burdensome. (Id. at p. 5).

The Secretary takes issue with Defendant's "numerosity" objections on three bases: (1) the interrogatories as applied to each employee should not be counted separately; (2) Defendants waived their "numerosity objection" by providing a "non-answer" to each interrogatory; and (3) Defendants impermissibly responded by selectively answering interrogatories rather than answering what they contend are the 25 authorized interrogatories.  (DN 31-7, at p. 2). Defendants contest these arguments as moot, stating they responded to each and every interrogatory, "albeit not with the responses [the Secretary] might have desired."   (DN 34, at p. 5).

Rule 33 provides that unless otherwise stipulated and ordered by the court, a party may serve on another party "no more than 25 written interrogatories, including all discrete subparts." Fed.R.Civ.P. 33(a)(1).    Neither Rule 33 nor this Circuit identifies a precise formulation for determining when discrete separate subjects should be treated as multiple interrogatories.  *See* State Farm Mut., Auto Ins. Co. v. Pain & Injury Rehabilitation Clinic, Inc., No. 07-CV-15129, 2008 WL 2605206, at *2 (E.D. Mich. June 30, 2008); *see also* Nat'l Products, Inc. v. Aqua Box Products, LLC, No. C12-605-RSM, 2013 WL 12114634, at *2 (W.D. Wash. Feb. 22, 2013) (citing Paananen v. Cellco P'ship, No. 08-1042, 2009 WL 3327227, at *2 (W.D. Wash. Oct. 8, 2009) (additional citation omitted)). Generally, however, subparts are counted as one interrogatory if "they are logically or factually subsumed within and necessarily related to the primary question." Paananen, 2009 WL 3327227, at *2 (quoting Safeco of Am. v. Rawstrom, 181 F.R.D. 441, 445 (C.D. Cal. 1998)).   A single question asking for several bits of information relating to the *same topic* counts as one interrogatory.   Singleton v. Hedgepath, No. 1:08-cv-00095, 2011 WL

1806515, at *7 (E.D. Cal, May 10, 2011) (citing Safeco of Am., 181 F.R.D. at 445).   On the other hand, when the primary question can be answered fully and completely without answering the second question, the questions will be considered distinct.   Paananen, 2009 WL 3327227, at *2 (citing Estate of Manship v. United States, 232 F.R.D. 552, 555 (M.D. La. 2005)).

Here, the Court agrees with the Secretary that Interrogatories No. 2 and 3 do not create hundreds of separate interrogatories simply by asking for information concerning numerous employees.   *See* Hatfield v. A+ Nursetemps, Inc., No. 5:11-cv-416-Oc-10TBS, 2012 WL 1326120, at *4 (M.D. Fl. Apr. 17, 2012) (finding interrogatory stating: "[f]or each person identified in your response to the preceding interrogatory, please describe how those individuals were paid . . ." should be counted as a single interrogatory); Morgan v. Ga. Power Co., No. 7:06-cv-50, 2007 WL 1129337, at *2 n. 2 (M.D. Ga. Apr. 16, 2007) (finding interrogatory stating: "[i]dentify each person who you contend has knowledge of the facts and circumstances described in your Complaint and your Initial Disclosures" was a single interrogatory).   If the interrogatories for each employee were counted separately, discovery in FLSA cases involving numerous employees would be a fruitless endeavor.

Even so, the Court must still determine whether each subpart of Interrogatories No. 2 and 3 should be counted separately because if each subpart is considered discrete the Secretary has exceeded the Rule 33 limitation by submitting 31 interrogatories.   Interrogatory No. 2 reads:

For each person that was listed in Exhibit B, please state the following:

(a)  The individual's job title and duties;

(b)  The date the person began working or performing services for KDE Equine, LLC;

7

(c) The date the person stopped working or performing services for KDE Equine, LLC;

(d) The amounts paid to each person for each workweek from June 25, 2012 to present;

(e) The hours each individual worked during each workweek from June 25, 2012 to present; and

(f) The individual's rate of pay for each workweek from June 25, 2012 to present.

(DN 31-4, at p. 3).   Interrogatory No. 3 requests the same information as Interrogatory No. 2 but as to "all persons who worked or performed services for KDE Equine, LLC during any workweek from June 25, 2012 to present[,]" excluding those individuals listed in Exhibit B. (Id. at p. 4). Interrogatory No. 3 includes an additional subpart, seeking "(a) the individual's name[.]"

As to Interrogatory No. 2, the Court finds the subparts total three discrete inquiries: (1) the employee's job title and duties (subpart (a)); (2) the employee's period of employment (subparts (b) and (c)); and (3) the employee's amount and method of compensation (subparts (d), (e), and (f)).   Similarly, Interrogatory No. 3 contains the same three discrete inquiries as Interrogatory No. 3, and one additional inquiry: the employee's names.   Put otherwise, Interrogatories No. 2 and 3 have seven subparts total, meaning the Secretary submitted exactly 25 questions to Defendants. Because the Court finds the Secretary did not exceed the Rule 33 interrogatory limit, it is not necessary to address the parties' additional arguments as to numerosity.

**Rule 33(d) Production**

Defendants also claim their responses to all Interrogatories were sufficient based on Rule 33(d)'s "Option to Produce Business Records" because they produced all documents which might contain the information the Secretary is seeking.   (DN 34, at p. 5).   The Secretary argues that

8

Defendants' broad reference to documents produced in the "Wage and Hour investigation" does not satisfy their Rule 33(d) burden. (DN 31-7, at p. 4).

Rule 33(d) provides that, when an answer to an interrogatory may be derived or ascertained from the business records of the party on whom the interrogatory has been served, it is "sufficient answer to the interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory a reasonable opportunity to examine, audit, or inspect the records and to make copies, compilations, abstracts, or summaries." Fed.R.Civ.P. 33(d).

Rule 33(d) is not intended to be used as a "procedural device for avoiding the duty to give information." Mullins v. Prudential Ins. Co. of Am., 267 F.R.D. 504, 514 (W.D. Ky. Apr. 30, 2010). A party attempting to rely on Rule 33(d) must not only certify that the answer may be found in the records referenced by it, but also "must specify where in the records the answer [can] be found." Id. (quoting Cambridge Elecs. Corp. v. MGA Elecs., Inc., 227 F.R.D. 313, 322-23 (C.D. Cal. 2004) (additional citation omitted)). A party's general reference to a mass of documents or records is not an adequate response under Rule 33(d). Id.

With these considerations in mind, the Court will evaluate those Interrogatories to which the Secretary seeks compulsion of information, specifically Nos. 2, 3, 4, 5, 6, 7, 13, 14, 15, and 18.

### Interrogatory No. 2

As outlined above, the Secretary's Interrogatory No. 2 seeks job titles and duties, period of employment, and compensation information for the employees of KDE Equine listed in Exhibit B to the Complaint. Defendants objected to this Interrogatory as overbroad in that it seeks information regarding persons not employed by Defendants and information beyond the

9

"employees at issue" in the Complaint – hotwalkers and/or grooms. (DN 31-4, at pp. 3-4). Defendants also cite to Rule 33(d), asserting they produced the relevant information through records during the Department of Labor's investigations.

First, the Secretary agreed in his motion to compel to limit the scope of the interrogatories to "employees within the Commonwealth of Kentucky who performed services as hot walkers, grooms, and 'exercise riders.'" (DN 31-7, at p. 3). The Court agrees that these are the "employees at issue" in the case (DN 1, at pp. 4-5) and employees outside of these job categories are not relevant to this litigation and exceed the scope of permissible discovery. Second, Defendants fail to meet their Rule 33(d) burden. By stating only that "those records have already been provided to the DOL during its investigations," Defendants have failed to specify where in the records these answers can be found.

For these reasons, Defendants are ordered to produce the requested information regarding all employees working as hot walkers, grooms, or exercise riders listed in Exhibit B to the Complaint. If Defendants continue to rely on Rule 33(d) in their response, they must specify the actual documents in which the requested information will be found.

### Interrogatory No. 3

Defendants' objections to Interrogatory No. 3 are generally the same as their objections to Interrogatory No. 2. Defendants argue this inquiry is vague because it seeks information regarding "all persons" who "worked or performed services" for KDE during a given time period, without limiting the scope to "hot walkers and/or grooms," the employees at issue in the Complaint. (DN 31-4, at p. 5). Defendants again argue they produced the requested information to the DOL during its investigation. (DN 31-4, at pp. 5-6).

For the same reasons outlined above, Defendants are ordered to produce the requested information regarding any additional employees who worked as hot walkers, grooms, or exercise riders during the given time period that were not named in Exhibit B to the Complaint, and Defendants must identify the specific documents where this information can be found.

### Interrogatory Nos. 4 and 5

Interrogatory No. 4 requested Defendants "[i]dentify which, if any, persons identified in Interrogatory Nos. 2 and 3 were treated as 'independent contractors' and/or issued 1099 tax forms?"  (DN 31-4, at p. 6).   Relatedly, Interrogatory No. 5 seeks the reason "why" each person identified in Interrogatory No. 4 was treated as an "independent contractor" and/or was issued a 1099 tax form. (Id. at p. 7).   The Secretary argues this information is relevant to its claims because if an employee is misclassified as an independent contractor, an employer may be liable for violations of record keeping, minimum wage, and overtime laws.  (DN 31-7, at p. 5).   This information, the Secretary explains, goes to the core allegations of whether Defendants have violated the FLSA.   (Id.).   Defendants' response states they have produced the 1099's in their possession for those persons paid as freelance/exercise riders.   (DN 34, at p. 6).

The Court finds that information that would classify the employees at issue in the case as independent contractors is relevant to the Secretary's claims and proportional to the needs to the case because the Court has already limited the responses in Interrogatories No. 2 and 3 to only persons working as hot walkers, grooms, or exercise riders.   Defendants, therefore, are required to identify any persons from Interrogatories No. 2 and 3 who were treated as independent contractors and produce 1099 tax forms for those persons, if they have not been previously produced. Regarding Defendants' answer to Interrogatory No. 5, which states that exercise riders are

11

typically treated as independent contractors because they "go from barn to barn, working for other trainers at the same track and at other tracks," the Court finds this response sufficient.

### Interrogatory No. 6

Interrogatory No. 6 requests Defendants "[s]tate how KDE Equine determined and recorded the hours worked by the individuals performing services for KDE Equine, LLC during the period of June 25, 2012 through the present." (DN 31-4, at p. 8). Defendants again attempted to broadly object based on vagueness under Rule 33(d), stating "those records have already been provided to the DOL during its investigations." (DN 31-4, at p. 9). Although this objection was originally insufficient to satisfy their Rule 33(d) obligations, Defendants identify in their response that the "stables time sheets," responsive to the request, have been produced twice to the Secretary. (DN 34, at p. 6).

It appears, however, that the Secretary seeks information beyond the production of the stables time sheets, namely, *how Defendants determined and recorded the hours worked on the employee's time sheets.* (DN 31-7, at p. 5). Without examining the stables time sheets, the Court cannot determine whether their production sufficiently satisfies this Interrogatory. To the extent that the stables time sheets do not demonstrate how employees' hours worked were recorded, the Defendants are ordered to provide a written response to Interrogatory No. 6.

### Interrogatory No. 7

The Secretary's Interrogatory No. 7 requests "all documents and employment records maintained by KDE Equine, LLC which reflect daily and/or weekly hours worked, monies received, and rates of pay" for the hot walkers and grooms identified in Interrogatory Nos. 2 and 3. (DN 31-4, at p. 9). Defendants state that responsive records include payroll records and time

sheets, which have already been produced to the Secretary, and also include W-2s, which Defendants will make available at a mutually convenient time and location, on request. (Id. at pp. 9-10).

Because Defendants have admittedly not produced W-2s responsive to this Interrogatory, the Court orders said W-2s for all hot walkers, grooms, and exercise riders identified in Interrogatories No. 2 and 3 be produced to the Secretary.

### Interrogatory No. 13

Interrogatory No. 13 seeks "the annual gross dollar volume of revenue for KDE Equine, LLC for calendar years 2012 to present." (DN 31-4, at p. 14). Defendants explain that KDE Equine has admitted to annual gross volume or sales made or business done of at least $500,000 in 2012, 2013, 2014, and 2015. (DN 34, at p. 7). Based on Defendants' response, the Court finds no issue remains as to this Interrogatory.

### Interrogatory Nos. 14 and 15

Interrogatory No. 14 reads: "[s]tate whether the individuals listed in Exhibit B, and the individuals identified in response to Interrogatory No. 3, engaged in interstate commerce or handled goods that were moved in interstate commerce, during each workweek that they performed services for KDE Equine, LLC." (DN 31-4, at p. 14).

Interrogatory No. 15, relatedly reads: "If you deny that KDE Equine, LLC, and the individual defendant, are subject to the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*, please list and identify the goods, products, and/or equipment that were used by the individuals listed in Exhibit B, and by the individuals identified in response to Interrogatory No. 3, while the individuals were performing services for KDE Equine, LLC. In responding to this interrogatory,

13

please specify the exact name and address of the entity or entities from whom you, or the person providing services, obtained the items."   (Id. at p. 15).

Defendants objected to both of these interrogatories as impermissibly requiring them to form conclusions of law.   (Id. at pp. 14-15; DN 34, at p. 7).   The Secretary counters that these questions seek "an application of facts to law," which is permitted under the federal rules.   (DN 31-7, at p. 6).

Federal Rule of Civil Procedure 33 draws a distinction between questions of fact or of the application of law to fact on one hand and pure questions of law on the other.   Everest Nat'l Ins. Co. v. Santa Cruz Cnty Bank, No. 15-cv-02085-BLF, 2016 WL 6311876, at *4 (N.D. Cal. Oct. 28, 2016) (citing Fed.R.Civ.P. 33 (an interrogatory is "not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]")).   Courts police this implied distinction by "permitting interrogatories involving law and fact" but declining to require response to those "asking solely about questions of law."   Id. (citing Kendrick v. Sullivan, 125 F.R.D. 1, 3 (D. D.C. 1989)).

These Interrogatories teeter on the line between "application of law to fact" and "legal conclusion," but the Court finds they are more akin to requests for legal conclusions. Interrogatory No. 14 asks Defendants to state an opinion as to whether its employees engaged in interstate commerce or handled goods that were moved in interstate commerce.   Although this question must be resolved on the facts of the case, it nonetheless requires Defendants to form a legal conclusion.   Similarly, Interrogatory No. 15 asks the Defendants to identify goods, products, or equipment used by the employees at issue so as to prove they were not engaged in interstate commerce.   This Interrogatory requires Defendants to make a legal analysis on one of the factual

issues in the case, which is impermissible.   *See* <u>Zinsky v. New York Cent. R. Co.</u>, 36 F.R.D. 680,

681-82 (N.D. Ohio Feb. 20, 1964).   Because the question of interstate commerce is one of law, the

Court finds these interrogatories, in present form, are improper.

### Interrogatory No. 18

In Interrogatory No. 18, the Secretary requests Defendants identify by name "the person or

persons responsible for hiring and firing and for setting pay for individuals of KDE Equine, LLC."

(DN 31-4, at p. 17).   The Defendants respond that their answer to Interrogatory No. 9 is subsumed

in their answer to Interrogatory No. 18.   The Court agrees and finds no additional response to this

interrogatory is necessary.

### B. Requests for Production

The Secretary's motion also seeks Defendants produce documents, or allow for inspection

of documents, responsive to his Rule 34 requests.   (DN 31-1, at p. 6).   The Secretary generally

asks for Defendants to affirm that (1) all responsive documents have been produced with respect to

Churchill Downs and (2) the documents produced during mediation are properly a part of their

document production, and are not arguably covered under FRE 408 (as the documents have been

designated by Defendants).   (DN 31-7, at p. 7).   The Secretary specifically requests Defendants

produce a privilege log, produce the "personnel files" discussed in Request No. 14, and produce

information related to compliance with the FLSA discussed in Request No. 19.   (<u>Id.</u>).

Defendants answer that they have fully produced documents responsive to the Secretary's

requests. (DN 34, at p. 7).   Defendants also object to the Secretary's requests for a privilege log

and for evidence of compliance with a New York Consent Judgment.   (<u>Id.</u> at pp. 7-8).

Most of this dispute over document production seems to arise from Defendants' production of 1,539 pages of documents responding to the Secretary's letter request pursuant to the Magistrate Judge's Report on Settlement Conference. (DN 25).  Defendants marked these documents as "Documents Produced During Settlement Communications."  Although Defendants believe their "settlement communication" label is proper, their response to the Secretary's motion to compel states they "are willing to ratify the documents produced as the documents they have that would otherwise appear to be responsive to the Plaintiff's document requests[.]"  (DM 34, at p. 3).  Based on this ratification, Defendants have addressed both of the Secretary's general concerns regarding document production.

As to the Secretary's request for a privilege log, the Court finds this is unnecessary because Defendants clarify that no documents are being withheld on the basis of privilege and because Defendants ratified the documents produced originally as "settlement communications."

Regarding Request No. 14, the Court finds the "personnel files" that the Secretary seeks are relevant and proportional to the claims in this case.   Defendants, as such, must produce these "personnel files," specifically I-9 forms, W-4 forms, and W-2 forms, for the individuals identified in response to Interrogatory No. 3 to the extent that Defendants have not already produced these documents in the 1,539 pages of documents that Defendants ratified as responsive.

Lastly, Request No. 19 seeks "all documents that relate to any and all steps taken by defendants and their agents to ensure compliance with the Fair Labor Standards Act at any and all locations where individuals worked for defendants at any time between June 25, 2012 and present."  (DN 31-5, at p. 10).  Defendants presume this Request seeks information proving compliance with the "permanent injunction" entered in the Eastern District of New York ("New

16

York Consent Judgment") in January of 2013, which Defendants believe is overreaching in that this lawsuit is limited to Defendants' operation within the State of Kentucky.   (Id.; DN 34, at pp. 7-8).   The Court agrees that evidence of compliance with the New York Consent Judgment is beyond the scope of permissible discovery in this case.   While the Consent Judgment itself is relevant, discovery regarding Defendants' compliance with it does not relate to the claims against Churchill Downs' employees within Kentucky.   However, any evidence of Defendants' compliance with the FLSA within Kentucky and relating to the employees identified as hot walkers, grooms, or exercise trainers at Churchill Downs must be produced to the Secretary.

C. Requests for Admission

The Secretary's motion to compel also takes issue with Defendants' responses to Requests for Admission Nos. 1, 4, 5, 7, 8, 9, and 10.   (DN 31-1, at pp. 6-7; DN 31-7, at pp. 8-9).

**Request for Admission No. 1**

In Request No. 1, the Secretary asks Defendants to admit that "[t]he individuals listed on Exhibit B to the Complaint performed services for KDE Equine, LLC."   (DN 31-6, at p. 2). Defendants initially responded with objections and stated they could "admit only that it appears that some of the persons whose names are included in DOL's Exhibit B were employed at some point in time in Kentucky by KDE."   (Id. at p. 3).   Now, in their response, Defendants state they "are willing to admit that the names listed in Exhibit B to the Complaint appear to correspond to persons who, at some point in time, 'performed services for' KDE."   (DN 34, at p. 8).   The Court finds Defendants' further response to Request No. 1 is adequate in that Defendants willingly admit that the names in Exhibit B correspond to those who have performed services for them.   No further supplementation of this request is needed.

17

## Request for Admission Nos. 4 and 5

Request No. 4 seeks admission that "[t]he individuals listed on Exhibit B and identified in the answer to Interrogatory No. 3 handled goods that had been moved in "commerce," as that term is defined in 29 U.S.C. § 203(b), during each workweek while the individual performed services for KDE Equine, LLC." (DN 31-6, at p. 3).   While Request No. 5 seeks admission that "[f]or calendar years 2011 through 2015, KDE Equine, LLC constituted an "enterprise engaged in commerce," as that phrase is defined in 29 U.S.C. § 203(s)(1)." (Id. at p. 4).   Defendants object that both of these requests impermissibly require them to form and provide a legal conclusion. (DN 34, at p. 8).

Rule 36(a) permits requests for admission that "relate to statements or opinions of fact or the application of law to fact." Fed.R.Civ.P. 36(a).   However, "a request for admission which involves a pure matter of law, that is, requests for admissions of law which are related to the facts of the case, are considered inappropriate."   Reichenbach v. City of Columbus, No. 2:03CV-1132, 2006 WL 143552, at *2 (S.D. Ohio Jan. 19, 2016) (quoting Lakehead Pipe Line Co., Inc. v. Am. Home Assurance Co., 177 F.R.D. 454, 458 (D. Minn. 1997)).   The distinction between the application of law to fact and a legal conclusion is, unfortunately, "not always easy to draw." Thompson v. Beasley, 309 F.R.D. 236, 241 (N.D. Miss. 2015) (quoting Benson Tower Condominium Owners Assoc. v. Victaulic Co., 105 F. Supp. 3d 1184, 1196 (D. Ore. 2015) (additional citation omitted)).

Like Interrogatory Nos. 14 and 15, a close call exists as to whether these Requests for Admission constitute an "application of law to fact" versus a "legal conclusion." Yet the Court finds these Requests are nearer to requests for legal conclusions.   See Tobkin v. The Fl. Bar, 509

18

B.R. 731, 734 (S.D. Fl. 2014) (request for admission that Florida Bar Association was not governmental "entity" calls for conclusion of law); <u>Tulip Computers Int'l, B.V. v. Dell Computer Corp.</u>, 210 F.R.D. 100, 108 (D. Del. 2002) (determining whether a patent is valid calls for legal conclusion); <u>Playboy Enters., Inc.</u>, 60 F. Supp. at 1057 (request to admit that defendant was "public" figure as defined in case law calls for legal conclusion).    Both Requests seek admissions regarding Defendants engaging in "interstate commerce," which the Court has already deemed an improper legal conclusion.    These Requests, therefore, are not admitted for purposes of this litigation.

### Request for Admission Nos. 7 and 8

Request Nos. 7 and 8 aim for Defendants' admission that the hours worked by the individuals listed in Exhibit B to the Complaint and Interrogatory No. 3 "were not accurately recorded on a daily and weekly basis on timekeeping and payroll records maintained by KDE Equine, LLC throughout the entire period of June 25, 2012 to present."  (DN 31-6, at p. 5).   In responding to Request Nos. 7 and 8, Defendants answered "[d]enied." (DN 31-6, at p. 5).   The Secretary's motion to compel argues that Federal Rule of Civil Procedure 36 requires Defendants to specifically state the reasons for their denial. (DN 31-7, at p. 9).

Rule 36 states that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit it or deny it.   A denial must fairly respond to the substance of the matter[.]" Fed.R.Civ.P. 36(a)(4).   Denials are expected to be "forthright, specific, and unconditional."   <u>Noffsinger v. United States</u>, No 5:09-CV-38, 2011 WL 635877, at *3 (W.D. Ky. Feb. 11, 2011) (quoting 8B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2260 (3d ed. 2010)).   Here, Defendants

have specifically and unconditionally denied Requests for Admission Nos. 7 and 8, and the Court finds these responses are sufficient to satisfy Rule 36(a)(4).

### Request for Admission No. 9

The Secretary's Request No. 9 sought admission that "[h]ot walkers and grooms typically worked seven days a week, from 5:00 a.m. to 11:00 a.m. in the mornings, and from 3:30 p.m. to 5:00 p.m. in the afternoons." (DN 31-6, at p. 5).   After noting its objections to the Request as "impermissibly vague" and as failing to define the term "typically," Defendants answered the admission as "denied." (Id.).

Unlike Requests Nos. 7 and 8, Request No. 9 by its language requires more than a one-word denial.   As such, Defendants must provide detail in their denial responding to the substance of the request.   Defendants' objection to the Secretary's failure to define the term "typically" is similarly meritless.   When a party is in doubt about the meaning of a discovery request, the responding party should give it a "reasonable interpretation," which may be specified in the response.   Connectus LLC v. Ampush Media, Inc., No. 8:15-cv-2778-T-33-JSS, 2016 WL 6996147, at *4 (M.D. Fl. Nov. 30, 2016) (quoting M.D. Discovery Handbook § IV.A.3). Defendants should ascribe a reasonable interpretation to the term "typically" in more specifically denying this request.

### Request for Admission No. 10

Finally, Request No. 10 sought Defendants admit that "[a]ccording to KDE Equine LLC's payroll records for 2012 and 2013 individuals performing services for defendants were not paid overtime pay." (DN 31-6, at p. 6).   Defendants denied the request as written because it requires

them to impermissibly form conclusions of law and objected to the Secretary's failure to define the phrase "performing services" and the term "overtime pay."  (Id.).

The Court finds Defendants' denial is insufficient here.  First, this request seeks Defendants apply the law to the facts of the case and does not call for an improper legal conclusion.  Second, Defendants should have applied a "reasonable interpretation" to the phrase "performing services" and the term "overtime pay" and identified those interpretations in their response.  With these considerations in mind, Defendants must supplement their answer with a more specific denial responding to the substance of the Secretary's request.

### D. Request for Attorneys' Fees

The Secretary requests that Defendants' attorneys pay the reasonable expenses he incurred in filing the motion to compel, including attorney's fees. (DN 31-1, at p. 7).  The Court declines this request because the Secretary's motion is not granted in full and reasonable people could disagree as to the appropriateness of the parties' decisions regarding the contested discovery objections and responses.  *See* Blackwell v. Liberty Life Assurance Co. of Boston, No. 3:15-CV-DJH, 2016 WL 3004568, at *17 (W.D. Ky. May 20, 2016) (citing Doe v. Lexington-Fayette Urban Cnty Gov., 407 F.3d 755-65 (6th Cir. 2005) (citation omitted)).

### IV. The Secretary's Objection to Defendants' Attachment 3

After Defendants filed their response to the Secretary's motion to compel, the Secretary filed a "notice of objection to the filing of attachment 3 to Defendants' Response."  (DN 35). The Secretary objects to this document being in the record because it was prepared specifically for and presented at the parties' first mediation session, making it inadmissible under Federal Rule of

Evidence 408(a)(2).   (DN 35, at p. 2).   This document, the Secretary argues, reduces his settlement offer to writing, which outweighs any relevance the document may have had to Defendants' response.   (Id. at p. 3).

Defendants believe the Secretary's objection under FRE 408 is contradictory since the Secretary previously complained about Defendants classifying their documents as "privileged and confidential settlement communications."   (DN 36, at pp. 1-2).   Defendants argue that the two pages in Attachment 3 were not included to "prove or disprove the validity or amount of a disputed claim" but rather for "another purpose" – to demonstrate that both parties provided documents in the mediation that were marked as protected under Rule 408. (Id. at p. 3).

The Court agrees that Defendants have offered Attachment 3 to demonstrate the Secretary endorsed a similar "for settlement purposes" classification on certain documents, not to prop up the validity of their disputed claim.   Defendants' inclusion of this excerpt does not violate Rule 408.   Nonetheless, the Court finds it was unnecessary for Defendants to attach this document to their response only to demonstrate that both parties provided documents labeled "for settlement purposes."   To prevent prejudice to the Secretary, the Court orders Attachment 3 to the Defendants' response be removed from the record.

<u>ORDER</u>

The Secretary's Motion to Compel (DN 31) is hereby **GRANTED IN PART** and **DENIED IN PART** to the extent set forth above.

The Secretary's request for attorney's fees is **DENIED.**

Attachment 3 to Defendants' Response (DN 34-3) shall be **REMOVED** from the record.

Copies:        Counsel of Record

23