## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, | ) | |
| Secretary of Labor, United States | ) | |
| Department of Labor, | ) | |
| | ) | |
| | ) | Case No. 3:15-cv-562-CRS-DW |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KDE EQUINE, LLC, d/b/a STEVE | ) | |
| ASMUSSEN STABLES, AND STEVE | ) | |
| ASSMUSSEN, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**Clark O. Brewster, OBA# 1114**
**BREWSTER & DE ANGELIS, P.L.L.C.**
**2617 East 21st Street**
**Tulsa, OK  74114**
**Tel: (918) 742-2021**
**Fax: (918) 742-2197**
cbrewster@brewsterlaw.com

**Kent Wicker, KY. Bar # 82926**
**Kelly Schoening Holden, KY. Bar # 86745**
**DRESSMAN BENZINGER LAVELLE PSC**
**2100 Waterfront Plaza**
**321 West Main Street**
**Louisville, KY 40202**
**Tel: (502) 572-2500**
**Fax: (502) 572-2503**
kwicker@dbllaw.com
*Attorneys for Defendants KDE Equine, LLC,*
*d/b/a Steve Asmussen Stables and Steve*
*Asmussen*

## TABLE OF CONTENTS

**Page**

**INTRODUCTION & SUMMARY OF ARGUMENT**...................................................1

I.  **BACKGROUND** .............................................................................................3

   A.  **The Fair Labor Standards Act** ...........................................................3

   B.  **The Undisputed Material Facts of This Case** ...................................4

      **1.  The parties** .....................................................................................4
      **2.  Context for the DOL investigation and the filing of this lawsuit**...........5
      **3.  The various classes of employees at issue in this case**........................9
         **a.  Barn foremen**..........................................................................9
         **b.  Grooms**...................................................................................10
         **c.  Hot walkers**............................................................................12
         **d.  Freelance riders** ....................................................................14
      **4.  Recordkeeping and payroll practices**...........................................15

II.  **SUMMARY JUDGMENT STANDARDS** .................................................16

III. **ARGUMENT (SUMMARY JUDGMENT SHOULD BE GRANTED)**............................16
   A.  **Grooms and Hot walkers are Compensated Consistent with the FLSA's Requirements**.......................................................................................17
      **1.  Defendants' employees are salaried** ............................................18
      **2.  The employees' salaries are FLSA compliant under 29 C.F.R. §778.309**............19
      **3.  Alternatively, even under the fluctuating workweek method (29 C.F.R. §778.114), the workers' salaries were FLSA compliant**......................23
         **a.  The workers work fluctuating hours**......................................23
         **b.  The workers receive a salary** ................................................24
         **c.  The fixed wages are equal to the minimum wage each week** ...........24
         **d.  The employers and employees had a mutual understanding about the rate of pay**..............................................................................24
   B.  **Defendants Complied With Their FLSA Recordkeeping Obligations**........................25
   C.  **Plaintiff Has Failed to Prove that Defendants Willfully Violated the FLSA**..............26
   D.  **Because Defendants Acted in Good Faith, Liquidated Damages Should Not be Awarded**..................................................................................28

IV. **CONCLUSION** .............................................................................................29

**CERTIFICATE OF SERVICE** ......................................................................31

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Adams v. Dep't of Juv. Just. of City of New York,*
143 F.3d 61 (2d Cir. 1998) ................................................................................. 20, 23

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ......................................................................................... 16

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946) ......................................................................................... 3

*Arban v. West Pub. Corp.,*
345 F.3d 390 (6th Cir.2003) .............................................................................. 28

*Baltimore & Ohio R. Co. v. United States,*
261 U.S. 592 (1923) ......................................................................................... 21

*Bay Ridge Op. Co. v. Aaron,*
334 U.S. 446 (1948) .............................................................................. 17, 18, 20, 25

*Bennett v. City of Eastpointe,*
410 F.3d 810 (6th Cir. 2005) ............................................................................. 16

*Chicago Title Ins. Corp. v. Magnuson,*
487 F.3d 985 (6th Cir. 2007) ............................................................................. 16

*Crawford v. Marion County Election Bd.,*
553 U.S. 181 (2008) ......................................................................................... 6

*Dole v. Elliott Travel & Tours, Inc.,*
942 F.2d 962 (6th Cir. 1991) ............................................................................. 26

*Douglas v. Argo-Tech Corp.,*
113 F.3d 67 (6th Cir. 1997) ............................................................................... 19, 24

*Elwell v. Univ. Hosp. Home Care Servs.,*
276 F.3d 832 (6th Cir. 2002) ............................................................................. 26, 28

*Featsent v. City of Youngstown,*
859 F.Supp. 1134 (N.D. Ohio 1993) ................................................................. 11

*Giles v. City of New York,*
41 F.Supp.2d 308 (S.D.N.Y. 1999) ................................................................... 22

iii

*Griffin v. Wake Cty.,*
  142 F.3d 712 (4th Cir. 1998)................................................................ 23

*Hercules, Inc. v. United States,*
  516 U.S. 417 (1996) ........................................................................ 21

*Highlander v. K.F.C. Nat'l Mgmt. Co.,*
  805 F.2d 644 (6th Cir. 1987)........................................................ 18, 23

*IBP, Inc. v. Alvarez,*
  546 U.S. 21 (2005) ......................................................................... 3, 4

*Integrity Staffing Sols., Inc. v. Busk,*
  135 S.Ct. 513 (2014) ......................................................................... 3

*Jiao v. Shi Ya Chen,*
  2007 WL 4944767 (S.D. N.Y. March 30, 2007).................................. 22

*Kellum v. Browning's Adm'r,*
  21 S.W. 2d 459 (Ky. 1929) ............................................................... 22

*Knudsen v. Lee & Simmons,*
  89 F.Supp. 400 (S.D.N.Y.1949)........................................................ 29

*L.K. Comstock & Co., Inc. v. Becon Const. Co.,*
  932 F.Supp. 948 (E.D. Ky. 1994).......................................... 22, 23, 25

*M. Kraus & Bros. v. United States,*
  327 U.S. 614 (1946) ................................................................... 25, 26

*Maxberry v. Univ. of Kentucky Med. Cntr.,*
  39 F.Supp. 3d 872 (E.D. Ky. 2014) ..................................................... 6

*Mayhew v. Wells,*
  125 F.3d 216 (4th Cir. 1997).............................................................. 21

*McLaughlin v. Richland Shoe Co.,*
  486 U.S. 128 (1988) ..................................................................Passim

*Michigan Ass'n of Gov't Emp.,*
  992 F.2d 82. (6th Cir. 1993)............................................................... 19

*Miller v. Kansas Power & Light Co.,*
  585 F.Supp. 1509 (D. Kan. 1984) ................................................ 28, 29

*Mitchell v. Abercrombie & Fitch, Co.,*
  428 F.Supp. 2d 725 (S.D. Ohio 2006)........................................... 22, 23

*Monahan v. Cty. of Chesterfield, Va.,*
   95 F.3d 1263 (4th Cir. 1996) ................................................................ 21

*Moon v. Kwon,*
   248 F.Supp.2d 201 (S.D.N.Y. 2002) ...................................................... 22

*Myers v. Copper Cellar Corp.,*
   192 F.3d 546 (6th Cir. 1999) .......................................................... 16, 17

*Retail Store Employees Union, Local 400 v. Drug Fair-Community Drug Co.,*
   307 F.Supp. 473 (D.D.C.1969) ............................................................. 29

*Terwilliger v. Home of Hope, Inc.,*
   21 F. Supp. 2d 1305 (N.D. Okla. 1998) ............................................... 27

*Walling v. Youngerman–Reynolds Hardwood Co.,*
   325 U.S. 419, 424 (1945) (1945) ............................................... 18, 20, 21

## Statutes

29 U.S.C. §§ 201 .................................................................................... 1, 3

29 U.S.C. §206 (a) (1) (c) ......................................................................... 17

29 U.S.C. §§206, 207(a)(1), 213 ................................................................ 3

29 U.S.C. § 207(a)(1) ....................................................................... passim

29 U.S.C. § 207(e)(5) ............................................................................... 20

29 U.S.C. § 211(c) ..................................................................................... 4

29 U.S.C. § 213(a)(1) .............................................................................. 2, 4

29 U.S.C. § 251 .......................................................................................... 3

29 U.S.C. § 254(a) ..................................................................................... 3

29 U.S.C. § 255(a) ................................................................................. 4, 26

29 U.S.C. §260 ......................................................................................... 28

New York State Labor Law 661 ................................................................. 8

## Rules

Fed. R. Civ. P. 56(a) ................................................................................ 16

Fed. R. Civ. P. 56(c)(1) ............................................................................ 16

Fed. R. Evid. 902 ....................................................................................... 6

## **Regulations**

29 C.F.R. § 516.2(c) ........................................................................ 25, 26

29 C.F.R. § 541.100 .......................................................................... 2, 4

29 C.F.R. §541.602(a) ........................................................................... 19

29 C.F.R. §778.108 ............................................................................... 18

29 C.F.R. § 778.114 ............................................................. 18, 23, 24, 25

29 C.F.R. § 778.202(a) .......................................................................... 20

29 C.F.R. §778.211 ............................................................................... 12

29 C.F.R. § 778.309 ........................................................................ 18, 19

29 C.F.R. § 778.323 ............................................................................... 19

## **Other Authorities**

Pub. L. No. 80-49 §4(a), 61 Stat. 86-87 ................................................... 3

Restatement (Second) of Contracts § 202(4) ........................................... 22

## INTRODUCTION & SUMMARY OF ARGUMENT

The Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (FLSA), commands that for covered employees, an employer subject to the statute should pay the minimum wage for all hours worked under 40 hours per workweek, but for all hours worked in excess of 40 hours, overtime compensation should be paid at a rate of time and a half. §207(a)(1). In this case, the Court confronts FLSA claims by the Department of Labor (DOL), through the Secretary of Labor, against Steve Asmussen—one of the most accomplished and decorated professional horse trainers in the world—and KDE Equine, LLC ("KDE"), his horse training company. As relevant here, KDE employs four classes of workers: grooms, people who care and tend to the horses; hot walkers, those who walk horses to cool them down after an exercise; freelance riders, part-time independent contractors that work a few hours in the morning riding the horses to exercise them; and barn foremen, supervisory employees that hire, fire, discipline, and manage all the other non-managerial workers listed. KDE pays hot walkers and grooms $8 per hour for all hours worked under 40 hours per workweek, but for all hours in excess of 40 hours, those employees are paid time and a half, $12 per hour.

In a long line of cases spanning decades, several federal courts, including the Sixth Circuit, have held that an employer is FLSA compliant when, like here, minimum wage is paid for straight hours worked and time and a half for overtime hours in excess of 40 hours per workweek. Indeed, tracking this long accepted view, both the DOL New York Office and the New York State DOL (collectively "DOL New York"), after carrying out contemporaneous and detailed reviews of KDE's payroll and recordkeeping practices, concluded that the employer was FLSA compliant, except for minor state law infractions. Believing that they were FLSA compliant, Defendants implemented their New York payroll and recordkeeping practices in their Kentucky operations.

1

To KDE's great surprise, the DOL Kentucky Office ("DOL Kentucky")—reviewing the same exact payroll and recordkeeping practices deemed FLSA compliant in New York—claims here that Defendants have violated the FLSA in their Kentucky operations. DOL Kentucky claims that Defendants have failed to pay the minimum wage and overtime compensation, and have misclassified barn foremen and their part-time independent contractor freelance riders as FLSA exempt and/or non-covered workers. In addition, DOL Kentucky claims that KDE has failed to comply with its FLSA recordkeeping obligations. This suit followed.

DOL Kentucky's claims lack merit. Defendants should be granted summary judgment. The evidence in this case unequivocally shows that Defendants guarantee their FLSA-covered employees that in each workweek, they will be assured of at least 40 hours of work, and for all hours worked under 40 hours, they are paid $8 dollars an hour. All work done in excess of 40 hours is paid at time and a half ($12 an hour). The letter and spirit of the FLSA requires no less or more. 29 U.S.C. § 207(a)(1).

The other classes of workers are not subject to the FLSA's overtime requirements. Thus far, the parties have jointly stipulated that barn foremen are salaried employees with supervisory and managerial functions who are exempt from overtime requirements. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100. Furthermore, the DOL has conceded that it is not asserting FLSA claims for freelance riders in this case.

For the remainder of the claims in this case, the two-year statute of limitations period applies. The DOL cannot prove willfulness, which is necessary to extend the statute of limitations to three years, because Defendants acted in good faith in attempting to fulfill their FLSA obligations. The DOL New York's conclusion—that save for minor state law infractions, Defendants were FLSA compliant—justifiably led Defendants to have a good faith belief that

their payroll and recordkeeping practices were fully FLSA compliant until the unexpected prosecution of this case against them.

Against this background of good faith FLSA compliance, liquidated damages should not be awarded. This Court has discretion whether to award liquidated damages. Thus far, with no basis of a willful violation or absence of good faith, liquidated damages should not be awarded.

Defendants' motion for summary judgment should be granted.

## I. <u>BACKGROUND</u>

### A. THE FAIR LABOR STANDARDS ACT

Enacted originally in 1938, the FLSA, 29 U.S.C. §§ 201, *et seq.*, requires covered employers to pay employees no less than the minimum wage for all hours worked and time and a half for all hours worked in excess of 40 hours in a given workweek, unless one or more enumerated exemptions provides otherwise. 29 U.S.C. §§206, 207(a)(1), 213. The FLSA does not specifically define "work" or "workweek." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). Nonetheless, the Supreme Court, applying dictionary definitions, has concluded that "work" encompasses any "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* (internal quotation marks omitted) (citations omitted).

"Workweek," on the other hand, has a checkered history. The Court's early decisions defined the term to "include[e] all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-691 (1946), *superseded by statute*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49 §4(a), 61 Stat. 86-87 (codified at 29 U.S.C. § 254(a)). This expansive definition "provoked a flood of litigation." *Integrity Staffing Sols., Inc. v. Busk*, 135 S.Ct. 513, 516 (2014). Congress responded by enacting the Portal-to-Portal Act, 29 U.S.C. §§ 251, *et seq.*,

which although it left the definitions of "work" and "workweek" intact, it exempted time spent "for travel to and from the location of the employee's 'principal activity,' and for activities that are preliminary or postliminary to that principal activity." *IBP*, 546 U.S. at 28.

To help quell disputes about compensable time, the FLSA affords exemptions and imposes certain obligations on employers. As relevant here, the FLSA exempts employers from paying overtime to employees employed in "bona fide executive, administrative, or professional capacit[ies]." 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100, *et seq*. To ensure that non-exempt employees are properly compensated, covered employers have recordkeeping obligations of the hours worked by those individuals in a workweek. *See* 29 U.S.C. § 211(c) (requiring employers to "make, keep and preserve records" of a non-exempt employee's hours worked in a workweek).

The statute of limitations for unpaid overtime claims is generally two years. 29 U.S.C. § 255(a). The limitations period, however, can be extended up to three years for willful violations. *Id.* The employee bears the burden of proving willfulness. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-133 (1988).

**B. The Undisputed Material Facts of This Case**

There is no genuine dispute as to the following material facts:

**1.     The parties**

1. The Plaintiff, R. Alexander Acosta, is the 27th Secretary of Labor.  He was sworn in on April 28, 2017, replacing Thomas E. Perez. He brings these FLSA claims against Defendants in his official capacity. *See* Ex. 2, Amend. Compl., Dkt. 43; *see also* https://www.dol.gov/agencies/osec  (last accessed July 12, 2017) (noting change at the helm).

4

2. The first named Defendant is KDE Equine, LLC d/b/a Steve Asmussen Stables. *See* Ex. 2. KDE is a limited liability company owned and co-managed by Steven Asmussen (Asmussen) and his wife Julie Asmussen. *See* Ex. 1, Asmussen Depo. Tr. at 15:5-24. KDE is an entity that, through Steven Asmussen and his employees, trains racing Thoroughbred horses. *Id.,* Ex. 1 at 9:9-23.

3. The second named Defendant is Steven Asmussen, an individual. *See* Ex. 2. Asmussen is a licensed and hall of fame professional Thoroughbred racehorse trainer. *See* Ex. 1 at 9:9-23; Ex. 3, Blasi Depo. Tr. at 66:6-13. As noted, Asmussen and his wife own and co-manage KDE. *Id.* Ex. 3 at 15: 5-24.

4. KDE and Asmussen operate one of the largest and most successful Thoroughbred race horse training and care operations in the United States. *See* Ex. 1 at 11: 22-25 and 28:7-13; and Ex. 3 at 66: 9-13. KDE has operations in Lone Star Park, Grand Prairie, Texas; Belmont Park, Elmont, New York; Keeneland Race Course, Lexington, Kentucky; and Churchill Downs, Louisville, Kentucky.  *See* Ex. 1 at 12: 2-10. However, only the Kentucky operations are at issue in this case.

## 2. Context for the DOL investigation and the filing of this lawsuit

5. Between July 3 and August 16, 2013, an operative of the People for the Ethical Treatment of Animals (PETA) infiltrated the KDE organization as part of a covert operation into its operations. *See* Ex. 4, March 18, 2014 PETA Letter at p. 3, n. 6. The PETA operative managed to hoodwink KDE Assistant Trainer Steve Blasi into staying at his house, rent free, and consummated an intimate relationship, while undertaking stealth undercover investigation into

KDE's employment practices at Churchill Downs, Louisville, Kentucky and Saratoga Race Course in Saratoga Springs, New York. *Id.*[1]

6. From the resulting covert operation, PETA conducted a widespread promotional campaign against horse racing using video clips and internet narratives that were published and broadcast by national media platforms, such as the New York Times and others.[2] PETA also wrote several letters making unfounded claims (based on the covert operation) against Steve Asmussen and KDE to several government agencies, including but not limited to, the Department of Justice, Department of Homeland Security, local police departments, and the DOL Wage and Hour Division in the Louisville District Office. *See* Ex. 4, *In re Invest. of Alleg. made by PETA against Asmussen,*1-5, *supra* n.1. PETA claimed that KDE and Asmussen were violating the FLSA by failing to pay employees minimum wage and time and half for all hours worked in excess of 40 hours. *Id.* Moreover, PETA also claimed (in the same letter) that KDE and Asmussen were in violation of a permanent injunction embedded in a Consent Judgment entered by the United States District Court for the Eastern District of New York for alleged prior FLSA violations. *Id.*; Ex. 5, Consent Judgment, *Sec'y of Labor v. KDE Equine, LLC*, Case No. 12-CV-6368 (E.D.N.Y. 2013).

---

[1] *See* Kentucky Horse Racing Commission, *In re Investigation of Allegations made by PETA against Steve Asmussen, Scott Blasi and KDE Equine LLC,* 1-5 (Jan. 15, 2015), *available at,* http:/kygoLtouceetsAttachments/55/Report%20of%20Investigation%20of%20Allegations%20m ade%20by%20PETA%20against%20Steve%20Asmussen,%20Scott%20Blasi,%20and%20KDE %20Equine,%20LLC.pdf (last accessed July 26, 2017).

Courts in this circuit routinely take "judicial notice of records and information located on government websites because they are self-authenticating under Federal Rule of Evidence 902." *Maxberry v. Univ. of Kentucky Med. Cntr.*, 39 F.Supp. 3d 872, 875 n. 5 (E.D. Ky. 2014) (citations omitted); *see also Crawford v. Marion County Election Bd.*, 553 U.S. 181, 213 n. 7 (2008) (taking judicial notice of local government website).

[2] *See generally*, *In re Invest. of Alleg. made by PETA against Asmussen,*1-5, *supra* n.1.

7. And yet, after the New York Consent Judgment and injunction were formally filed on January 24, 2013, KDE and Asmussen proactively took steps to improve their operations and practices all round, so as to ensure compliance with the FLSA. Defendants made sure that each non-exempt employee received the minimum wage and overtime compensation (paid at time and a half) for all hours worked in excess of 40 hours per workweek as required under the FLSA, formalized timesheets to comply with their timekeeping and/or recordkeeping obligations, required employees to complete their own timesheets, and labor law signs were posted in KDE barns. *See* Ex. 1 at 70:6-25, 71:11-18, 72:14-25, 73:1-13, 80:1-7, and 81: 23-25; *see also* Ex. 6, Pete Belanto Depo. Tr. at 36:25, 37: 1-17, 43: 1-25 and 44:1-2; Ex. 3 at 53:5-21; and Ex. 7, Toby E. Sheets Depo. Tr. at 98:13-24.

8. Following the filing of the Consent Judgment and permanent injunction, DOL New York conducted independent reviews of KDE and Asmussen's labor practices in New York to check for compliance with the FLSA and New York law. *See* Ex. 8, WHISARD Case Summary Rpt.; *see also* Ex. 9, DOL New York letter. KDE and Asmussen run the exact same Thoroughbred horse training operation and payroll systems in New York as they do at Churchill Downs (essentially the same records for, in many cases, the same employees performing the same tasks, and applying essentially the same laws (actually more exacting than the corresponding federal laws). *See* Ex. 6 at 80:8-18; Ex. 3 at 83:21-25, 84:3-6, and 86:5-12; and Ex. 10, Fleming Depo. Tr. at 29:13-17. The DOL New York in 2013 determined that KDE and Asmussen "ha[ve] *come into compliance* . . . [and] [t]hey have designed an accurate time keeping [and] are paying T1/2." *See* Ex. 8 (emphasis added). Accordingly, the investigation into KDE and Asmussen was formally closed. *Id.*

9. A contemporaneous DOL New York investigation similarly concluded that—aside from a failure to (i) pay the workers' wages on a *weekly rather than bi-weekly* basis, as required by New York's wage laws; (ii) provide the proper notice to workers pertaining to rates of pay, overtime pay, the basis of the workers' pay (hourly, by shift, per day); (iii) pay approximately $480 in overtime to the PETA operative—KDE was in compliance with New York labor laws. As relevant here, the DOL New York concluded:

> Your client's company [KDE] was in compliance with New York State Labor Law 661 and Part 142-2.6, in which the company did keep contemporaneous time records for the week on site and stored at the bookkeeper's location for six years. Steve Asmussen Racing Stables, KDE Equine LLC did provide any daily hours, when requested by the NYS DOL.

*See* Ex. 9.

10. Given this background, KDE and Asmussen sincerely believed in good faith (and with good reason) that they were in compliance with the FLSA. *See* Ex. 3 at 86:5-12; *see also* Ex. 11, Anthony Martinez Depo. Tr. at 52: 3-9; and Ex. 6 at 79:17-25 and 80:2-7.

11. Nonetheless, DOL Kentucky conducted its own contemporaneous investigation that culminated in this lawsuit. DOL Kentucky admitted that it was aware that DOL New York had looked into KDE and Asmussen's labor practices in New York and concluded that they were in compliance with the FLSA. *See* Ex. 12, Karen Garnett Depo. Tr. at 33:6-17; and Ex. 11 at 50:9-22 and 51:17-19. Other than categorically stating that New York is not Kentucky, DOL Kentucky had no affirmative rebuttal evidence to counter the fact that KDE and Asmussen run the exact same Thoroughbred horse training operation and payroll systems in New York as they do at Churchill Downs. *See* Ex. 6 at 80:8-18; Ex. 3 at 84:3-6 and 86:5-12; and Ex. 10 at 29:13-17.

12. Against this background of favorable FLSA and New York labor law compliance reviews, the DOL nonetheless claims that KDE and Asmussen have willfully failed to pay their employees overtime compensation for work done in excess of 40 hours per workweek at Churchill Downs Racetrack in Louisville, Kentucky. *See* Ex. 2 at pp. 2-6. In addition, the Amended Complaint alleges that Defendants have violated the FLSA's recordkeeping provisions for employee time records for hours worked. *Id.* Furthermore, the DOL had initially claimed that Defendants had misclassified certain employees as exempt, when they are not. *Id.* But the parties have jointly stipulated to a dismissal of those claims. *See* Ex. 17, Joint Stipulation. A complete list of the remaining employees the DOL claims to represent in this lawsuit is enclosed. *See* Ex. 2, Ex. B, Dkt. 43-2.

### 3. The various classes of employees at issue in this case

13. As previously noted, at the apex of the KDE organization is Steve Asmussen. *See* Ex. 1 at 15:5-24. Under him are assistant trainers. *Id.,* Ex. 1 at 25:1-25. Initially, the DOL claimed that four classes of employees: hot walkers, grooms, freelance riders and a number of "individuals erroneously treated as exempt employees," were at issue in this case. *See* Ex. 2, pp. 5-6. Below, we provide an overview of each class of the remainder of the workers.

#### a. *Barn foremen*

14. From 2012 to 2014, KDE and Asmussen employed Alberto Bahena, Jose A. Alfonso, Miguel Hernandez, Hugo Morales, Bartolo Uscanga, Ruben Hernandez, Rony Herrera, and Rowdy Werner as barn foremen ("foremen") at Churchill Downs and Keeneland, both located in Kentucky. *See* Ex. 13, KDE Organizational Chart; Ex. 1 at 27:10-23; Ex. 3 at 22:17-20; *see also* Ex. 14, Defendants' Supplemental Responses to Plaintiff's Discovery Requests (Jan. 13, 2017).

15.  Barn foremen are supervisors who work under Asmussen and his assistant trainers at any given location. *See* Ex. 15, Alberto Behena Depo. Tr. at 7:14-23; Ex. 16, H. Morales Depo. Tr. at 6:24-25, 7:1-5 and 8:8-17; and Ex. 7 at 25:11-15.

16. As foremen, these employees have the authority to delegate and supervise hot walkers and grooms, to ensure that the horses are well fed and looked after. *See* Ex. 15 at 7:14-23 and 8:20-23. The foremen hire grooms and hot walkers and are also responsible for advising them of their rate of pay and other terms of employment. *See* Ex. 15 at 16:12-21, 17:24-25 and 18:1-4; Ex. 16 at 13: 9-24; Ex. 10 at 9:5-8 and 19:17-21; Ex. 3 at 45:21-25 and 46:1-12. The foremen have the power to fire hot walkers and grooms. *See* Ex. 7 at 47:9-11 and 48:4-9. The foremen are paid a salary of $1,000 per week. *See* Ex. 3 at 45:17-20; Ex. 7 at 114:21-25 and 115:1-6. The foremen are always managing.  *See* Ex. 1 at 60:8-11.

17. The DOL has stipulated that barn foremen are exempt employees under the FLSA for overtime purposes. *See* Ex. 17.

### b.      Grooms

18. The DOL has stated that "this case mainly concerns hot walkers and grooms." *See* Ex. 1 at 39:24-25 (statement by DOL lawyer) and Ex. 11 at 84:25 and 85:1-9 (in accord). The grooms at issue in this case are listed in Exhibit B to the Amended Complaint. *See* Ex. 2; *see also* Ex. 14.

19. Grooms are individuals employed to take general care of horses, clean the stalls, feed them, and bandage their legs and wash those bandages. *See* Ex. 7 at 26:11-14; Ex. 15 at 12:7-12; and Ex. 18, Galen Pruitt Depo. Tr. at 8:10-16.

20. Grooms work consistent hours seven days a week from 5am to 11am, and in the afternoon, they come back for an hour (3:30pm to 4:30pm) to again clean the stalls and feed the

horses for the evening. *See* Ex. 18 at 20: 6-17, 18: 23-25 and 19:1-4; and Ex. 3 at 32:2-18. Based on their consistent schedules, grooms are paid a salary that, in addition to paying them minimum wage for their regular hours, includes an overtime premium at time and a half for their hours worked in excess of 40 hours per week. *See* Ex. 6 at 19:4-15. Occasionally, grooms may work additional hours over and above their normal schedules when they perform extra tasks such as taking a horse to a race or doing laundry.  The grooms are paid $25 for walking a horse to the race, a task that takes less than two hours, thus an hourly overtime rate of at least $12. The grooms are paid an extra $100 for doing laundry, accounting for an overtime hourly rate of at least $12. *See* Ex. 6 at 19:4-15; and Ex. 3 at 33:8-24.

21. From 2012, grooms were paid a guaranteed minimum—$8 an hour for regular time guaranteed up to 40 hours and $12 an hour for all hours worked in excess of 40 hours. *See* Ex. 6 at 20:4-7; Ex. 10 at 19:1-10; and Ex. 3 at 36:14-17. The hourly rate was adjusted to $9 to comply with the increased minimum wage in Kentucky. *See* Ex. 6 at 20:8-19; and Ex. 18 at 25:7-8.

22.  The grooms are informed about the terms of their salary at the time of employment. Grooms are told to expect: (1) an hourly rate of $8 for their regular 40 hours; (2) for any extra hours over 40 they work, they will get paid $12 an hour; (3) for a typical workweek, grooms are guaranteed at least 40 hours a week and at least a minimum of 15 hours of overtime, which when the minimum guarantee of regular hours and overtime is put together, they will receive approximately $1,012 every two weeks in addition to the extra amounts for additional tasks performed, paid at $12 an hour; (4) grooms also get paid a discretionary bonus when their horse wins, typically 1%;[3] and (5) even if they don't work their full hours, grooms will still be paid

---

[3] Discretionary bonuses are not included in the regular rate and overtime computation. *Featsent v. City of Youngstown*, 859 F.Supp. 1134, 1136 (N.D. Ohio 1993) ("discretionary bonuses are excluded" from overtime computation), *aff'd in part and rev'd in part on other grounds*, 70 F.3d

their guaranteed minimum. *See* Ex. 6 at 19:4-21, 35:24-25, 36:1-17 and 76:19-21; Ex. 3 at 36:1-4, 42:9-14, 60:13-18 and 69: 7-11; Ex. 18 at 28:3-13 and 29: 21-25; Ex. 15 at 15:19-25, 17:18-21 and 22:7-8; Ex. 16 at 19:7-22 and 17: 4-16; Ex. 18 at 46:15-21 and 47: 1-3. Each employee is responsible for completing his own timesheet. *See* Ex. 16 at 15:6-20.

23. For a typical groom, the minimum-guaranteed arrangement translates into 7 hours per day workdays, or 98 hours per pay period:

$$
\begin{array}{lll}
80 \text{ hours @ } \$8.00 = & \$640 \\
18 \text{ hours @ } \$12.00 = & \underline{\$216} \\
& \$856 \text{ earned} & [\$900 \text{ paid}]
\end{array}
$$

*See*, *e.g.*, Ex. 19, Pay stubs. Although the pay records appear to indicate that the workers are paid regular time at $8 and overtime at $8, it is simply because of the way the KDE accountant's computer works. As Pete Belanto inputs the employee's regular hours into his computer at $8 and then adds the overtime hours, the system automatically calculates an overtime premium at time and a half and adds it to the salary to get a gross amount to be paid to the workers. *See* Ex. 6 at 50:25; 51; *see also* Ex. 19 from 2012-2015.

24. In fact, a groom's pay increased from a minimum of $900 to approximately $1,000 per pay period. *See* Ex. 15 at 13:25 and 14:1-6. In those instances where the payroll records reflected more time than the fixed scheduled time, additional overtime was paid. *See* Ex. 6 at 29:2-20.

### c.   *Hot walkers*

25. Hot walkers are employees that walk horses to help them cool down after a riding exercise. *See* Ex. 3 at 25:1-8. Hot walkers work consistent schedules, typically from 5am till 10am, seven days a week and an extra hour in the afternoon every other day. *See* Ex. 18 at 19:16-

---

900 (6th Cir. 1995); 29 C.F.R. §778.211 (discretionary bonuses are excluded from overtime computation).

17; and Ex. 16 at 9:23-25.  Like the grooms, occasionally hot walkers may work additional hours over and above their normal schedules when they perform extra tasks such as taking holding a horse for the blacksmith or doing laundry.  The workers are paid $25 for holding a horse for the blacksmith - a task that takes less than two hours - thus an hourly overtime rate of at least $12.  The workers get paid an extra $100 for doing laundry, accounting for an overtime hourly rate of at least $12. *See* Ex. 6 at 19:4-15, 30:3-25 and 31: 1-10; and Ex. 3 at 33:8-24.

26. From 2012, hot walkers, like grooms, were paid a guaranteed minimum—$8 an hour for regular time guaranteed up to 40 hours and $12 an hour for all hours worked in excess of 40 hours. *See* Ex. 6 at 20: 4-7; Ex. 10 at 19:1-10; and Ex. 3 at 36:14-17. The hourly rate was adjusted to $9 to comply with the increased minimum wage in Kentucky. *See* Ex. 6 at 20:8-19. Hot walkers do not receive discretionary bonuses. *See* Ex. 3 at 42:9-14.

27. Workers, classified as hot walkers, are credited in the KDE payroll with having regularly worked 81 hours per period, when their actual hours generally totaled 77-78 hours per pay period (5 hours every morning, then 1 additional hour every other afternoon). *See* Ex. 6 at 31:19-25; and Ex. 20, KDE pay records at pp. 094-234.

28. For individuals classified as hot walkers, pay records indicate a regular $652 per pay period payment, an amount that accurately accounts for regular hours paid at minimum wage ($8 per hour) plus an overtime premium ($12 per hour) for the overtime hour per pay period:

[80 hours @ $8/hr.] + [1 O/T hour @ $12/hr.] =  $652 /pay period

*See* Ex. 16 at 14: 6-17; Ex. 20 at pp. 094-234; *see also* Ex. 19.

29. The hot walkers are informed about the terms of their salary at the time of employment. The hot walkers are told to expect: (1) an hourly rate of $8 for their regular 40 hours; (2) for any extra hours they work, they will get paid time and a half (which works out to

be $12 per hour); (3) for a typical workweek, hot walkers are guaranteed at least 40 hours a week; and (4) any extra work they perform, they are paid overtime. For example, a hot walker may exceed his regular hours by holding a horse for the blacksmith (a task that takes less than two hours to perform), but KDE still pays the hot walker for the full 2 hours. *See* Ex. 10 at 17:16-20, 18:1-7 and 20:12-19; Ex. 3 at 14-18 and 64:6-14. Even when they don't work their full hours, hot walkers are still paid their full guaranteed minimum. *See* Ex. 18 at 46:15-21; and Ex. 16 at 17:4-16.

***d.   Freelance riders***

30. Freelance riders ride the horses during exercise sessions. *See* Ex. 21, Defendants' Responses to Interrogatories, Nos. 4-5 (Jan. 19, 2016); and Ex. 14, Nos. 2-3.

31. Freelance riders go from barn to barn, trainer to trainer, at a given racetrack, providing their specialized services to numerous trainers, rather than a single trainer. Freelance riders have skills that not every single person can provide; they have to be a certain weight and their selection also largely depends on how well they can handle a horse. *See* Ex. 21, Nos. 4-5; and Ex. 7 at 41:12-25, 41:4-8 and 44:3-20.

32. Defendants, as well as other trainers, consider these freelance riders to be 'independent contractors,' due to the nature of the work; freelance riders generally only exercise the horses in the morning and their hours do not exceed 40 hours per workweek. *See* Ex. 7 at 43:7-9 and 44: 3-6. Generally, the freelance riders ride from 6am till 9:30am, as those are the permitted track hours at Churchill Downs. *See* Ex. 10 at 11:5-9; and Ex. 1 at 48:12-19. Consistent with industry practice, KDE and Asmussen provided those freelance riders with IRS Form 1099s. *See* Ex. 21, Nos. 4-5; and Ex. 22, Form 1099s, pp. 682-704.

33. The DOL has conceded that it is not asserting FLSA claims for freelance riders in this case. *See* Ex. 23, email from DOL Attorney Matthew Shepherd (July 26, 2017).

### 4.      Recordkeeping and payroll practices

34. Each KDE employee fills in his own time sheet. *See* Ex. 16 at 15:6-20; Ex. 3 at 46: 24-25 and 47:1-8; and Ex. 18 at 34:23-25; *see also* Ex. 24, time sheets. With the exception of a small number of aberrational time sheets, a substantial number were correct and showed that the employees were being paid in compliance with the FLSA. *See* Ex. 11 at 90:20-23; and Ex. 6 at 74:6-21.

35. In addition, the foremen also independently maintain time records of employees, including keeping track of the overtime hours worked by each employee. *See* Ex. 10 at 25:7-15; Ex. 18 at 40:1-19; and Ex. 6 at 54:1-23 and 75:7-25.  Those records are turned in to the assistant trainers who check them to ensure that they match the time sheets, and they in turn, send those records together with the employee time sheets to KDE Accountant Pete Belanto in California for processing payroll. *See* Ex. 10 at 25:7-25; and Ex. 3 at 55:14-23. The checks are then remitted to the various KDE locations. *See, e.g.*, Ex. 18 at 38:6-18.

36. KDE Account Pete Belanto is the de facto payroll records keeper. He retains time notes from the respective assistant trainers and foremen and payroll records for five years, but although he keeps check stubs, he does so for a shorter period of time. *See* Ex. 6 at 59:6-25 and 60:5-21. As *de facto* payroll record-keeper, Belanto retains substantial volumes of FLSA required documents. *See, e.g.*, Ex. 25, compensation information; Ex. 26, W-2s; Ex. 27, check stubs; and Ex. 28, workers' statements.

37. KDE and Asmussen are covered and subject to the provisions of the FLSA. Asmussen is a covered "employer" under the FLSA. In addition, KDE's gross volume of sales exceeded $500,000 in each of the years at issue in this case. *See* Ex. 1 at 61:24-25 and 62:1-25.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must show this Court that no genuine issue of material fact exists, viewing all evidence in the light most favorable to the nonmoving party, and drawing all justifiable inferences in the nonmoving party's favor. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A genuine issue of material fact only exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–252.

To avoid summary judgment, the nonmovant must cite to "particular parts of materials in the record" to establish that a particular fact cannot be supported or is genuinely disputed. Fed. R. Civ. P. 56(c)(1); *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir. 2007). This Court is not required to comb through the record to establish that it is bereft of a genuine issue of material fact before granting summary judgment. *Id.* at 995.

## III. ARGUMENT
### SUMMARY JUDGMENT SHOULD BE GRANTED

"[A]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (citations and internal quotation marks omitted). The

record in this case unequivocally shows that Defendants guarantee their FLSA-covered employees that in each workweek, they will be assured of at least 40 hours of work, and for all hours worked under 40 hours, they are paid $8 dollars an hour. All work done, in excess of 40 hours, is paid at time and a half ($12 an hour). The letter and spirit of the FLSA requires no less or more. 29 U.S.C. § 207(a)(1).

Thus far, on this record, Plaintiff has failed to prove that Defendants willfully violated the FLSA. Plaintiff premised his willfulness claims on Defendants' alleged violation of a prior FLSA federal court injunction against them. But, as the record shows, that injunction was not violated; in fact, DOL New York, checking for compliance of that very injunction, determined that Defendants were FLSA compliant and closed its investigation. This Court, in turn, should also close the threat of liability.

Summary judgment should be granted.

## A. GROOMS AND HOT WALKERS ARE COMPENSATED CONSISTENT WITH THE FLSA'S REQUIREMENTS

"[A]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *Myers*, 192 F.3d at 551 (citations and internal quotation marks omitted). Generally, "Contracts for pay take many forms. The rate of pay may be by the hour, by piecework, by the week, month or year, and with or without a guarantee that earnings for a period of time shall be at least a stated sum." *Bay Ridge Op. Co. v. Aaron*, 334 U.S. 446, 460 (1948). For covered employees, the minimum level of compensation is at least "wages at . . . $7.25 an hour." 29 U.S.C. §206 (a) (1) (c). To check FLSA compliance, the "regular hourly rate must [first] be extracted." *Bay Ridge*, 334 U.S. at 460. The Supreme Court in *Bay Ridge* explained that the regular rate means "the hourly rate actually paid for the normal, *non-overtime workweek*." *Id.* at 461 (emphasis added). In other

words,  it is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945); *accord* 29 C.F.R. §778.108. Under the FLSA, employers and employees are "free to establish [the] regular rate at any point and in any manner they see fit . . . as long as the minimum hourly rates established by Section 6 [of the FLSA] are respected." *Walling*, 325 U.S. at 424.

As such, under the FLSA, "[c]ontracts for pay take many forms." *Bay Ridge*, 334 U.S. at 460. For salaried non-exempt employees, one acceptable form of compensation is to pay employees a weekly salary that includes both payment of their full workweek and an overtime premium for the number of regularly worked overtime hours. *See* 29 C.F.R. § 778.309. Another acceptable method is the fluctuating workweek (FWW) method. *Id.* § 778.114. Under this method, the employees are paid a salary that compensates them for all hours worked; and for hours worked in excess of 40 hours, the employer is required to pay the employees .5 of the regular hourly rate for each overtime hour. *See Highlander v. K.F.C. Nat'l Mgmt. Co.*, 805 F.2d 644, 647-648 (6th Cir. 1987)

As we demonstrate below, under either method of computation, Defendants complied with the FLSA's compensation requirements for both grooms and hot walkers.

### 1.      Defendants' employees are salaried

Throughout this litigation, the DOL has argued that Defendants were not FLSA compliant because overall, the workers were salaried with no overtime compensation, resulting in a lower hourly rate. *See* DOL Br., pp. 6-11, Dkt. 61-2.  Both 29 C.F.R. § 778.309 and 29 C.F.R. § 778.114 require that the employees receive a salary, *supra*.

18

We begin by addressing whether the employees were salaried under DOL regulations. "An employee is salaried even if his compensation consists of a guaranteed predetermined amount plus additional compensation." *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997) (citations omitted); 29 C.F.R. §541.602(a) (defining salary); *Michigan Ass'n of Gov't Emp.*, 992 F.2d 82, 84, n. 3. (6th Cir. 1993). Additionally, "hourly employees may be salaried if they are guaranteed a predetermined number of paid hours." *Douglas*, 113 F.3d at 71 (citations omitted).

As applied here, the workers' remuneration qualifies as a salary. The workers receive a guaranteed minimum, a weekly wage based on a guaranteed number of hours each week; which compensates them for all of their straight hours including an overtime premium, even if the workers work less than their guaranteed hours. *See* Ex. 18 at 46:15-21; Ex. 16 at 17:4-16; Ex. 6 at 19:4-21, 35: 24-25, 36:1-17 and 76:19-21; Ex. 3 at 36: 1-4, 42:9-14, 60:13-18 and 69:7-11; Ex. 18 at 28:3-13 and 29:21-25; and Ex. 15 at 15:19-25, 17:18-21 and 22:7-8. This payment arrangement should qualify as a salary under the Sixth Circuit's precedent and DOL regulations. *See Douglas*, 113 F.3d at 71; *accord* 29 C.F.R. §541.602(a).

### 2.    The employees' salaries are FLSA compliant under 29 C.F.R. §778. 309

When, like here, an employee works fairly consistent overtime hours, "it is, of course, proper to pay him, *in addition to his compensation for nonovertime hours, a fixed sum in any such week for his overtime work, determined by multiplying his overtime rate by the number of hours regularly worked*." 29 C.F.R. § 778.309 (emphasis added). Under those circumstances, the working arrangement between the parties is, of course, very instructive. *See* 29 C.F.R. § 778.323 ("As in all cases of employees hired on a salary basis, the regular rate depends *in part* on the agreement of the parties as to what the salary is intended to compensate.") (emphasis added).

The parties have wide latitude in structuring their work arrangement. *See Youngerman-Reynolds*, 325 U.S. at 424 (employers and employees are "free to establish [the] regular rate at any point and in any manner they see fit . . . as long as the minimum hourly rates established by Section 6 [of the FLSA] are respected."); *Bay Ridge*, 334 U.S. at 460 ("[c]ontracts for pay take many forms.").

The test for calculating the regular rate for salaried employees, in contrast to that for non-salaried workers, excludes overtime premiums. *See* 29 U.S.C. § 207(e)(5) (providing for exclusion of overtime premiums in regular rate calculations); *accord* 29 C.F.R. § 778.202(a); *Bay Ridge*, 334 U.S. at 461 (regular rate means "the hourly rate actually paid for the normal, *non-overtime workweek*.") (emphasis added). As a result, if under the parties' existing payment arrangement, "the pay rate set under the contract already includes an overtime premium for excess hours, that premium is not counted in determining the base rate . . . in other words, employees are not entitled to 'double' overtime." *Adams v. Dep't of Juv. Just. of City of New York*, 143 F.3d 61, 67 (2d Cir. 1998). Simply put, if the salary is intended to account and pay for both straight time and overtime rate (at time and a half), "the . . . arrangement is in compliance with the FLSA." *Id.*; *see also* Ex. 11 at 92:24-25 and 93:1-6 (the DOL investigator also conceded that such an arrangement would be FLSA compliant).

Here, Defendants' payment arrangement with their employees passes FLSA muster. Both grooms and hot walkers are told and agree to a salary that pays them $8 per hour for straight time, and includes an overtime premium paid at time and a half for hours in excess of 40 hours. *See* Ex. 6 at 20:4-7; Ex. 10 at 19:1-10; Ex. 3 at 36:14-17; Ex. 6 at 19:4-21, 35:24-25, 36:1-17 and 76:19-21; Ex. 3 at 36:1-4, 42:9-14, 60:13-18 and 69:7-11; Ex. 18 at 28:3-13, 29:21-25; Ex. 15 at 15:19-25, 17: 18-21, 22: 7-8; Ex. 16 at 19:7-22 and 17:4-16; *see also* Ex. 28 (nearly uniformly

echoing this arrangement). In addition, for any tasks performed over and above their consistent schedules (such as holding a horse for the blacksmith or doing laundry), the workers receive an additional overtime premium, paid at a rate of time and a half. *See* Ex. 6 at 19:4-15, 30:3-25 and 31:1-10; and Ex. 3 at 33:8-24.

The employers and employees had a mutual understanding about this payment arrangement. As the Supreme Court has stated, under the FLSA, employers and employees are "*free to establish* [the] regular rate at any point and *in any manner they see fit* . . . as long as the minimum hourly rates established by Section 6 [of the FLSA] are respected." *Walling*, 325 U.S. at 424 (emphasis added). Another manner in which an employee-employer employment arrangement and its terms can be evidenced, other than expressly, is through the *conduct* of the parties. *See Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997) ("[T]he existence of such an understanding may be 'based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise"); *Monahan v. Cty. of Chesterfield, Va.*, 95 F.3d 1263, 1281, n. 12 (4th Cir. 1996) ("[A]n employer can also demonstrate the existence of this clear mutual understanding from employment policies, practices, and procedures.").

Both the United States Supreme Court and the Supreme Court of Kentucky recognize that the existence of a contract and its terms can be inferred from the conduct of the parties that evidences their understanding. *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) (an agreement between parties, "which, although not embodied in an express contract, . . . [can be] inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding.") (quoting *Baltimore & Ohio R. Co. v. United States*, 261 U.S. 592, 597 (1923)). The Kentucky Supreme Court has also recognized this established

general principle of contract law for years, which would no doubt have governed the employment arrangements at issue in this case. *See Kellum v. Browning's Adm'r*, 21 S.W. 2d 459, 463 (Ky. 1929) ("a promise in a contract may be inferred wholly or partly from such conduct as justifies the promisee in understanding that the promisor intended to make a promise" and this "mutual assent by the parties . . . may consist wholly or partly of acts, other than written or spoken words.").

In fact, when, like here, there is no specific written memorandum memorializing the parties' employment terms, "the Court must infer the terms of the parties agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record." *Jiao v. Shi Ya Chen*, No. 03 CIV. 0165(DF), 2007 WL 4944767, at *13 (S.D. N.Y. March 30, 2007) (citing *Moon v. Kwon*, 248 F.Supp.2d 201, 206 (S.D.N.Y. 2002); *Giles v. City of New York*, 41 F.Supp.2d 308 (S.D.N.Y. 1999)). Under those circumstances, "[w]here an agreement involves repeated occasions for performance . . . any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." *L.K. Comstock & Co., Inc. v. Becon Const. Co.*, 932 F.Supp. 948, 966 (E.D. Ky. 1994) (quoting Restatement (Second) of Contracts § 202(4)); *Mitchell v. Abercrombie & Fitch, Co.*, 428 F.Supp. 2d 725, 738 (S.D. Ohio 2006) (finding agreement on FWW when evidence showed that workers knew their salary compensated them for all their hours worked and overtime).

As applied here, there was an understanding on the terms of employment. Fairly uniformly, the workers said they were in line with their agreed hours, with a substantial number expressing affirmatively that they understood they were paid time and a half. *See* Ex. 28. Furthermore, the repeated and consistent performance between the parties, without any objection

from the workers, should be "given great weight in the interpretation of the agreement." *L.K. Comstock*, 932 F.Supp. at 966 (citations omitted).

In sum, the workers' salary is FLSA compliant if the workers' salary pays them a minimum wage; the payment practice is regularly used; and the salary includes an overtime premium paid at time and a half. *See Adams*, 143 F.3d at 68 (noting that when all three conditions are met, pay structure is FLSA compliant).

### 3. Alternatively, even under the fluctuating workweek method (29 C.F.R. §778.114), the workers' salaries were FLSA compliant

In this circuit, the fluctuating workweek has four requirements:

(1) the employee's hours must fluctuate from week to week;
(2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums);
(3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and
(4) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked.

*Mitchell*, 428 F.Supp. 2d at 734 (citing 29 C.F.R. §778.114; *Highlander*, 805 F.2d at 647). We address each in turn.

#### a. *The workers work fluctuating hours*

The DOL regulation—29 C.F.R. §778.114—simply requires that an employee's hours "fluctuate." *Id.* There is no requirement that the employee's first hours fall below 40 hours to satisfy the regulation. *Mitchell*, 428 F.Supp. 2d at 734. Here, although the workers (grooms and hot walkers) worked on a predictable schedule, their hours fluctuated, especially when there was a race or extra tasks were involved. *See* Ex. 6 at 19:4-15; and Ex. 3 at 33: 8-24. This requirement is met here. *See* § 778.114; *see also Griffin v. Wake Cty.,* 142 F.3d 712, 715 (4th Cir. 1998) (explaining that FWW may apply even if the employee's fluctuating schedule is predictable, so long as hours fluctuate).

**b.** *The workers receive a salary*

As was previously shown, *supra*, the workers receive a guaranteed minimum, a weekly wage based on a guaranteed number of hours each week.  Even if the workers work less than their guaranteed hours, they are paid the same amount. *See* Ex. 18 at 46:15-21; Ex. 16 at 17:4-16; Ex. 6 at 19:4-21, 35: 24-25, 36:1-17 and 76:19-21; Ex. 3 at 36:1-4, 42: 9-14, 60:13-18 and 69:7-11; Ex. 18 at 28:3-13 and 29:21-25; Ex. 15 at 15:19-25, 17:18-21 and 22:7-8. This payment arrangement qualifies as a salary. *See Douglas*, 113 F.3d at 71.

**c.** *The fixed wages are equal to the minimum wage each week*

As previously noted, § 778.114 requires that the worker receive a wage that includes payment for the worker's regular hours at or above minimum wage, plus any excess hours being paid at a rate of at least 1.5 the prevailing minimum wage. *Id.* Here, taking the example of a typical groom who works 98 hours per week, the workers receives an hourly rate above the minimum wage and all hours worked in excess of 40 hours are paid at time and a half.

$$
\begin{array}{ll}
\text{80 hours @ \$8.00 =} & \text{\$640} \\
\text{18 hours @ \$12.00 =} & \underline{\text{\$216}} \\
 & \text{\$856 earned} \quad \text{[\$900 paid]}
\end{array}
$$

*See, e.g.,* Ex. 24. The same is true for hot walkers. *See* Ex. 11 at 94:4-9 (the DOL investigator in this case conceded that from reviewing the records in this case, the employees were getting paid at least \$8 per hour as minimum wage). As previously noted, a typical hot walker is paid approximately \$652 per week, *supra*, 80 hours @ \$8/hr.] + [1 O/T hour @ \$12/hr.] = \$652 /pay period. *See, e.g.,* Ex. 27.  As such, grooms and hot walkers receive a weekly wage that equals the minimum wage.

**d.** *The employers and employees had a mutual understanding about the rate of pay*

As previously noted, *supra*, there was a valid understanding on the terms of employment.

24

Fairly uniformly, the workers expressed that the hours they were compensated for were accurate and in line with their agreement with the employers, with a substantial number expressing affirmatively that they understood they were paid time and a half. *See* Ex. 28. Furthermore, the repeated and consistent performance between the parties, without any objection from the workers, should be "given great weight in the interpretation of the agreement." *L.K. Comstock*, 932 F.Supp. at 966 (citations omitted).

The workers' overall compensation was FLSA compliant. *See* 29 C.F.R. § 778.114. The pay arrangement at issue in this case, patterned after the letter and spirit of the DOL regulation, is fully compliant. After all, even under the FLSA, compliant "[c]ontracts for pay take many forms." *Bay Ridge*, 334 U.S. at 460. This is simply one of them.

### B.   DEFENDANTS COMPLIED WITH THEIR FLSA RECORDKEEPING OBLIGATIONS

Title 29 C.F.R. § 516.2(c) imposes less onerous recordkeeping obligations on employers when their workers work substantially consistent hours. *Id.* The regulation provides:

> c) Employees working on fixed schedules. With respect to employees *working on fixed schedules*, an employer *may maintain records showing instead of the hours worked each day and each workweek as required by paragraph (a)(7) of this section, the schedule of daily and weekly hours the employee normally works.* Also,
> (1) In weeks in which an employee adheres to this schedule, indicates by check mark, statement or other method that such hours were in fact actually worked by him, and
> (2) In weeks in which more or less than the scheduled hours are worked, shows that exact number of hours worked each day and each week.

*Id.* (emphasis added). Regulations, like statutes, are also subject to rules of construction. *See M. Kraus & Bros. v. United States*, 327 U.S. 614, 622 (1946) (generally, "[w]ords used . . . are to be given their natural and plain meaning . . . ."). The first requirement of § 516.2(c) is that the workers should work "fixed schedules." *Id.* This requirement is satisfied because the workers work consistent hours dictated by the racetracks. *See* Ex. 1 at 48:12-19.

The second requirement in 29 C.F.R. § 516.2(c)—that employers maintain alternative records showing hours worked each day and week—is also met. *Id.* The workers completed time sheets for all their hours worked; in addition, the barn supervisors also kept accurate time notes, to help keep track of time. *See* Ex. 24; *see also* Ex. 6 at 59:6-25 and 60:5-21. With the exception of a few aberrational entries, the DOL investigator and the workers themselves confirmed that the hours were correct. *See* Ex. 11 at 90:20-23; *see also, e.g.,* Ex. 28.

The final requirement of § 516.2(c) is that the worker should affirm the correctness of the hours by a statement, mark, or "other method." *Id.* To this end, Defendants have produced pay stubs, time sheets and notes showing the hours worked by employees, with the employee's signature and affirmation mark. *See* Ex. 24. In addition, substantially all the employees confirmed that the hours listed on the time sheets were correct. *See, e.g.,* Ex. 28.

With all three requirements of 29 C.F.R. § 516.2(c) satisfied, Defendants complied with their FLSA recordkeeping obligations.

### C.   PLAINTIFF HAS FAILED TO PROVE THAT DEFENDANTS WILLFULLY VIOLATED THE FLSA

The statute of limitations for unpaid overtime claims is generally two years. 29 U.S.C. §255(a). The limitations period, however, can be extended up to three years for willful violations. *Id.* The employee bears the burden of proving willfulness. *See McLaughlin*, 486 U.S. at 133. In order to show willfulness, a plaintiff must prove, through undisputed facts, that the employer "had actual notice of the requirements of the FLSA by virtue of earlier violations, [an] agreement to pay unpaid overtime wages, and assurances of future compliance with the [Act]." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991) (citations omitted). On the other hand, "mere negligence by the employer is not sufficient to permit a finding of willfulness." *Elwell v. Univ. Hosp. Home Care Servs.*, 276 F.3d 832, 841 n. 5 (6th Cir. 2002);

*Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1305, 1308 (N.D. Okla. 1998) ("[n]egligence or an incorrect assumption that a pay plan complies with the FLSA do not meet the criteria for a willful violation of the FLSA.") (citing *McLaughlin*, 486 U.S. at 133).

As applied here, the DOL has failed to prove willfulness. As an initial matter, the DOL claims that Defendants were not in compliance with a previous FLSA consent judgment from the Eastern District of New York. *See* Pl.'s Br. Summ. J. 16-18, Dkt. 61-2. That, however, is wrong. After the New York Consent Judgment and injunction were formally filed on January 24, 2013, KDE and Asmussen proactively took steps to improve their operations and practices all round, so as to be in compliance with the FLSA. Defendants made sure that each non-exempt employee received a minimum wage and overtime compensation (paid at time and a half) for all hours worked in excess of 40 hours per workweek as required under the FLSA, introduced timesheets to comply with their timekeeping and/or recordkeeping obligations, employees started filling out timesheets themselves, and labor law signs were posted in KDE barns. *See* Ex. 1 at 70:6-25, 71:11-18, 72:14-25, 73:1-13, 80:1-7 and 81:23-25; *see also* Ex. 6 at 36:25, 37:1-17, 43:1-25 and 44:1-2; Ex. 3 at 53:5-21; *see also* Ex. 24.

Furthermore, following the filing of the Consent Judgment and permanent injunction, the DOL New York conducted independent reviews of KDE and Asmussen's labor practices in New York to check for compliance with the FLSA and New York law. KDE and Asmussen run the exact same Thoroughbred horse training operation and payroll systems in New York as they do at Churchill Downs (essentially the same records for, in many cases, the same employees performing the same tasks, and applying essentially the same laws (actually more exacting than the corresponding federal laws). *See* Ex. 6 at 80:8-18; Ex. 3 at 83:21-25, 84:3-6 and 86:5-12; and Ex. 10 at 29:13-17. DOL New York determined that Defendants were in substantial compliance

with their FLSA obligations. *See* Ex. 8; *see also* Ex. 9. Aside from minor infractions of New York state law—(i) a failure to pay the workers' wages on a *weekly rather than bi-weekly* basis; (ii) a failure to provide the proper notice to workers pertaining to rates of pay, overtime pay, in Spanish; (iii) and a failure to pay approximately $480 in overtime to the PETA operative ─Defendants received a clean bill of health. *See* Ex. 9. On these facts, the DOL is wrong in arguing that a willfulness violation can be predicated on a violation of the Eastern District of New York Consent Judgment, *supra*.

### D. BECAUSE DEFENDANTS ACTED IN GOOD FAITH, LIQUIDATED DAMAGES SHOULD NOT BE AWARDED

Under the FLSA, a district court has discretionary authority to reduce or eliminate a liquidated damages award when an employer demonstrates that its "failure to obey the [FLSA] statute was *both* in good faith *and predicated upon such reasonable grounds* that it would be unfair to impose upon it more than a compensatory verdict.'"*Arban v. West Pub. Corp.,* 345 F.3d 390, 408 (6th Cir.2003) (emphasis added) (citations omitted); 29 U.S.C. §260. The employer bears the burden of showing that its violation of the statute was in good faith and predicated on "reasonable grounds that it would be unfair to impose on [it] more than a compensatory verdict." *Elwell*, 276 F.3d at 840 (citations omitted).

Given the background─of Defendants receiving a FLSA clean bill of health for their wage and recordkeeping practices from DOL New York─KDE and Asmussen acted in good faith (and with good reason) that they were in compliance with the FLSA. *See* Ex. 3 at 86:5-12; *see also* Ex. 11 at 52:3-9; and Ex. 6 at 79:17-25 and 80:2-7. Multiple courts, under these circumstances, have found that §260's good faith and reasonable reliance were met. *See Miller v. Kansas Power & Light Co.,* 585 F.Supp. 1509, 1515 (D. Kan. 1984) (declining to award liquidated damages when employer, in good faith, relied on DOL investigation that determined

28

that it was FLSA compliant); *see also Retail Store Employees Union, Local 400 v. Drug Fair-Community Drug Co.,* 307 F.Supp. 473, 480 (D.D.C.1969) (no liquidated damages where Wage and Hour Administrator, though aware of employer's practices, took no action to require overtime compensation); *Knudsen v. Lee & Simmons, Inc.,* 89 F.Supp. 400, 406 (S.D.N.Y.1949)(no liquidated damages where Wage and Hour investigator found no violation after inquiry into employer's payroll).

Taken together, on this record, Defendants received a FLSA clean bill of health for their wage and timekeeping practices from the DOL New York. Believing that they were FLSA compliant, Defendants implemented their New York payroll and timekeeping practices in their Kentucky operations. Under these circumstances, several courts hold that it is unfair and unjust for this Court (at the behest of the DOL) to find Defendants liable for violating practices that were deemed to be FLSA compliant. *See Miller*, 585 F.Supp. at 1515; *Retail Store Employees Union*, 307 F.Supp. at 480; *Knudsen*, 89 F.Supp. at 406.

### IV. <u>CONCLUSION</u>

This Court should grant Defendants summary judgment on all claims. The evidence in this case unequivocally shows that Defendants guarantee their FLSA-covered employees that in each workweek, they will be assured of at least 40 hours of work, and for all hours worked under 40 hours, they are paid $8 dollars an hour. Work done, in excess of 40 hours, is paid at time and a half. The letter and spirit of the FLSA requires no less or more. 29 U.S.C. § 207(a)(1).

The other classes of workers are not subject to the FLSA's overtime requirements. The DOL has stipulated that barn foremen are exempt employees, and that it is not advancing claims for freelance riders.

Because the DOL cannot prove willfulness, which is necessary to extend the statute of limitations to three years, a two-year limitation applies. Additionally, because Defendants acted in good faith in attempting to fulfill their FLSA obligations, liquidated damages are not available in this case.

Defendants' motion for summary judgment should be granted.

Respectfully submitted,

*/s/ Clark O. Brewster*
Clark O. Brewster, OBA# 1114
BREWSTER &DE ANGELIS, P.L.L.C.
2617 East 21st Street
Tulsa, OK 74114
Tel: (918) 742-2021
Fax: (918) 742-2197
cbrewster@brewsterlaw.com

*and*

Kent Wicker, KY. Bar # 82926
Kelly Schoening Holden, KY. Bar # 86745
DRESSMAN BENZINGER LAVELLE
PSC
2100 Waterfront Plaza
321 West Main Street
Louisville, KY 40202
Tel: (502) 572-2500
Fax: (502) 572-2503
kwicker@dbllaw.com
**Attorneys for Defendants KDE Equine, LLC, d/b/a Steve Asmussen Stables and Steve Asmussen**

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2017, this document was forwarded to the Clerk of the Court using the ECF System for filing and for transmittal of a Notice of Electronic Filing to the Plaintiff's counsel of record.


*s/ Clark O. Brewster*