UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| EUGENE SCALIA, ) | |
| Secretary of Labor, United States ) | |
| Department of Labor, ) | Civil Action No. 3:15-CV-562-CHB |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND ORDER** |
| ) | |
| KDE EQUINE, LLC, et al., ) | |
| ) | |
| Defendants. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the damage calculations filed by Plaintiff, the Secretary of Labor [R. 132]. Defendants KDE Equine, LLC ("KDE") and Steve Asmussen filed objections to the Plaintiff's calculations [R. 133]. Plaintiff responded, [R. 135], and Defendants replied to Plaintiff's response [R. 136]. The matter has been fully briefed and is ripe for review. For the reasons set forth below, the Court will adopt the damages calculations provided by Plaintiff concerning Defendant's violations of Section 7, the overtime provisions, of the Fair Labor Standards Act and will enter judgment consistent herewith.

### I.   BACKGROUND

Following a bench trial, the Court issued its Findings of Fact and Conclusions of Law (the "Order") on September 11, 2020. [R. 130] The Court found, among other things, that Plaintiff had proven his claims for violations of the recordkeeping and overtime provisions of the Fair Labor Standards Act ("FLSA" or "Act") related to certain grooms and hot walkers employed by Defendants during the period June 25, 2013 to May 22, 2019. *Id*. at 2.[1] The Court was unable to calculate the overtime premiums due the affected employees because Defendants had only produced a portion of the

---

[1] The affected employees are listed on Exhibit B to the Amended Complaint. [R. 43-2]

1

relevant payroll records, and the Court found that Defendants' deficient pay practices continued up until the date of trial. *Id*. at 37. Accordingly, the Court ordered Defendants to produce additional payroll records (from January 1, 2016 to May 22, 2019) that were necessary to complete the damages calculations. *Id.* at 39. The Court further ordered Plaintiff to re-calculate total damages upon receipt of the additional payroll records and pursuant to the method set out in the Court's Order. *Id.* at 34–37, 39.

As directed, Defendants provided the additional payroll records [R. 131]. Thereafter, Plaintiff re-calculated damages according to the Court's instructions.[2] [R. 132]. Along with the revised calculations, Plaintiff submitted a proposed judgment awarding back wages totaling $211,541.76 for overtime violations. [R. 132-3] Plaintiff also provided a summary and worksheets for each affected employee that showed how the back wages were calculated. [R. 132-1] Defendants filed an objection to the re-calculated damages, [R. 133], and the Court ordered additional responses from the parties [R. 134]. Plaintiff filed a response to the Defendants' objection [R. 135], and Defendants replied to Plaintiff's response. [R. 136]

The Defendants do not take issue with the Plaintiff's number-crunching or point to any errors in the calculations. Rather, the Defendants recalculated the back wages using their own version of a "fixed regular rate" of pay. [R. 133, ¶ 6 ("Defendants have recalculated the back wages owed using the Court's construct of a fixed regular rate and a fixed number of hours worked . . . .")]. In essence, Defendants lifted the Court's example calculation in determining whether Defendants violated the *minimum wage* provisions of the FLSA, adopted that as their "fixed regular rate,"[3]

---

[2] The Court's Order also directed Plaintiff to respond to the previous objections made by Defendants concerning Plaintiff's original damages calculations. [R. 130 at 39] Plaintiff responded and corrected certain calculations as a result. [R. 132-2].

[3] The Defendants claim this "fixed regular rate" was then adjusted for "pay increases" (for which there were no factual findings). [R. 133, ¶ 6]

multiplied it by the Court's finding on the average number of hours worked by the employees, and claim that for any amounts paid to an employee in excess of this figure "they are entitled to an offset for [such] amounts previously paid as overtime." *Id.* ¶ 9. Once this offset is applied, the Defendants claim the correct figure for damages is actually $106,987.93, not the $211,541.76 calculated by Plaintiff. *Id.* ¶ 10. The Court finds Defendants' methodology and arguments wholly unsupported by the law, the facts, and this Court's Order.

## II. ANALYSIS

This Court exhaustively reviewed the relevant provisions of the FLSA and binding precedent in its prior Order. Suffice it to say that Defendants owe the affected employees for unpaid overtime. 29 U.S.C. § 216(b). Overtime compensation is pay that equals at least one and one-half times an employee's regular rate. 29 U.S.C. § 207(a). To determine overtime premiums due, the Court must first determine the regular rate. An employee's "regular rate" is the hourly rate actually paid to the employee for his or her normal, non-overtime workweek. 29 U.S.C. § 207(e); 29 C.F.R. §§ 778.108, 778.109. If an employee is paid on a salary basis, like here, then his or her regular rate is computed by dividing the salary (plus any additional compensation) by the number of hours that the salary is intended to compensate. 29 U.S.C. § 207(e); 29 C.F.R. § 778.113. For purposes of calculating damages, the Court found that, during the relevant timeframe, the hot walkers worked an average of 44.25 hours per week (or 88.5 hours per bi-weekly pay period), [R. 130, p. 16], and that the grooms worked an average of 52.5 hours per week (or 105 hours per bi-weekly pay period). *Id.* at 9.[4] The Court directed Plaintiff to use these hours in calculating the overtime premium due. *Id.* at

---

[4] "Due to the lack of record-keeping by Defendants," the Court found that it was impossible to determine the exact number of hours that the hot walkers and grooms worked. [R. 130, p. 16; *id.* at 19 ("[I]t is abundantly clear from the testimony at trial . . . that the timesheets contained so many inaccuracies that they were essentially useless for payroll purposes.")] Based on a detailed review of the evidence and testimony, the Court found that the hot walkers worked an average of 88.5 hours every two weeks and that the grooms worked an average of 105 hours every two weeks. *Id.* at 8–16.

36.

With this legal framework in mind, the Court then specifically directed how overtime damages should be calculated. Because the Court found that employees were paid on a salary basis and also received extra pay for performing extra tasks, the Court found that in order to calculate each employee's regular rate, the employee's *total compensation* (salary plus any money for extras) in that particular pay period must be divided by the number of hours the employee worked (88.5 hours for hot walkers and 105 hours for grooms per bi-weekly pay period). *Id.* at 34–37. The Court further found that the overtime premium due each employee would be equal to "time and a half of [the employee's] 'regular rate' for all hours worked in excess of 40 hours." *Id.* at 35 (citing 29 U.S.C. § 207(a)(1)). That is, the Court's Order made it abundantly clear how to calculate damages:

> *Defendants violated the FLSA here by failing to compute each employee's regular rate on a workweek by workweek basis for purposes of calculating overtime.* As explained above, the FLSA requires employers to compensate non-exempt employees at a rate of time and a half their "regular rate" for all hours worked in excess of 40 hours. 29 U.S.C. § 207(a)(1). The Act defines "regular rate" as the "total weekly pay divided by weekly hours." *Min & Kim II*, 919 F.3d at 363; 29 C.F.R. § 778.109. "Weekly pay" for purposes of the calculation in this case includes *all payment reflected in the payroll records for each employee – that is, the weekly salary plus payments for "extras"* -- consistent with the general rule that the regular rate includes all renumeration for employment (statutory exceptions aside). 29 U.S.C. § 207(e); 29 C.F.R. § 778.109.

[R. 130, pp. 34–35 (emphasis added)]. And in case that was not clear, the Court further provided:

> The parties here agreed on a weekly salary inclusive of all regular and overtime hours. Since the employees have already been paid the straight time pay for all hours worked (including the overtime hours), the overtime premium due is equal to half-time pay (*based on the regular rate for each week*) for the hours in excess of 40 for each workweek. 29 C.F.R. § 778.113; 29 C.F.R. § 778.325; 29 U.S.C. § 207(a).

*Id.* at 35 (emphasis added). Plaintiff's damages calculations[5] followed the Court's Order and the

---

[5] Plaintiff first determined whether the employee worked as a hot walker or a groom. Once this was done, the employee's total pay (based on the payroll records) was divided by the number of hours that the Court found that he/she worked in the two-week pay period (either 88.5 hours for hot walkers or 105 hours for grooms) to determine the regular rate. Then the regular rate was divided in half and multiplied by the number of overtime hours for each employee (either 8.5 for hot walkers or 25 for grooms) to determine the overtime premium due per employee for that period. Plaintiff made such

law. [6] [R. 135 at 3–4; R. 132-1]

Ignoring the Court's detailed instructions concerning how the regular rate (and overtime premiums) were to be calculated, Defendants inexplicably claim to use the "Court's construct" of a "fixed regular rate" to arrive at damages due. [R. 133 at ¶ 6] Incredibly, they claim "[t]he Court found that the hot walkers' regular rate is $7.37," [*id.* at ¶ 3], and "found the grooms' regular rate is $8.57." *Id.* at ¶ 4. Using this contrived "fixed regular rate," Defendants claim that any amounts paid in excess of these rates (after adjustments for "pay increases") reflect "overtime" payments for which they are entitled to a "credit." *Id.* at ¶ 9. But the Court created no such "construct" or "fixed regular rate" and expressly found that none of the wages paid by Defendants included overtime. [R. 130, pp. 24, 34] Defendants' phantom "fixed regular rate" of pay was actually based on the Court's calculations in determining whether Defendants violated the *minimum wage provisions of the FLSA*. In a separate portion of the Order, the Court found that employees were not paid below the minimum wage based on the following calculation:

> As explained above, hot walkers were typically paid a base salary of $652.00 for a two-week period, making their weekly wage $326.00. And as mentioned, hot walkers worked, on average, a week of 44.25 hours. This wage ($326.00) divided by 44.25 hours yields an hourly rate of $7.37, which is greater than the minimum wage. Likewise, the grooms were typically paid a base salary of $900.00 or $1,000.00 for a two-week period (making their weekly wage at least $450.00 per week) and worked an average of 52.5 hours per week. The smaller wage ($450.00) divided by the workweek (52.5 hours) also yields an hourly rate ($8.57) that is above the minimum wage.

*Id.* at 17. This finding had nothing to do with the Court's regular rate and overtime analysis, and Defendant's argument otherwise is specious at best.

---

calculations for every employee in every two-week pay period that the employee worked. The amounts were then added together in order to determine the amount of back wages due. [R. 132-1]

[6] For example, Melvin Alvarez was paid $1,048 for the pay period ending on May 23, 2014. [R. 132-1, p. 7] To calculate back wages for this two-week period, Plaintiff took Mr. Alvarez's pay, $1,048, and divided it by 105 hours to determine his regular rate of $9.98. Then the regular rate of $9.98 was divided in half and multiplied by the number of overtime hours he worked (25 since he was a groom) to determine the amount of back wages due for the period: $124.76.

The Court meticulously addressed each argument proffered by Defendants claiming they complied with the Act's overtime provisions and specifically found that none of the compensation paid to employees constituted overtime under the Act. *Id.* at 19–34. First, the Court found Defendants failed to track hours, which was fatal to their claims that they actually paid overtime. *Id.* at 5 ("[I]t is clear Defendants did not track the actual time employees spent working their normal schedules or performing these extra tasks."). The Court then explained why Defendants failed to pay overtime under 29 C.F.R. § 778.309 ("Fixed sum for constant amount of overtime"):

> "[a] salary that supposedly includes overtime pay but does not vary with actual hours worked cannot include 'overtime' as the Act defines it." *Min & Kim II*, 919 F.3d at 364 (citing 29 C.F.R. 778.310); *see also* 29 C.F.R. § 778.403 . . . Instead, the alleged overtime is included in the regular rate as straight-time pay, and does *not* count toward the overtime premium due the employee for hours worked past 40.

*Id.* at 24 (emphasis in original).

Likewise, the Court found Defendants failed to pay overtime under the Fluctuating Work Week ("FWW") method described in 29 C.F.R. § 778.114(a): "neither any part of the bi-weekly salaries nor any of the flat fees paid for the 'extra' tasks count as contemporaneous overtime premiums under the FWW method." *Id.* at 32. The Court went on:

> Clearly, it was impossible for Defendants to properly calculate the regular rate under the FWW method, since the actual hours worked in the workweek were not tracked. Given that, they cannot possibly have properly calculated the overtime premium due under the FWW (and unsurprisingly, there is no evidence that they actually performed the calculation mandated under the [relevant] formula).

*Id.* at 34.[7]

Nothing in the Court's Order supports the Defendants' argument that the Court "found" a "fixed regular rate," much less one linked to the minimum wage example calculation. Rather, the

---

[7] The Court also found Defendant's argument under the Department of Labor's Field Operations Handbook, CH. 32, ¶ 32j06 without merit. [R. 130 at 27–30]

6

Court made it perfectly clear that an employee's regular rate necessarily changes depending on the total compensation paid to the employee. *Id.* at 34–35. Indeed, the whole point of the Court's Order requiring additional payroll records, was to obtain total weekly compensation for each employee so that the regular rate (and overtime premium) could be calculated. Had the Court intended to use its minimum wage calculation as the regular rate (which would have been contrary to the law but would have saved the Court considerable time in its analysis), the Court would have said so. The Court's Order made perfectly clear that Defendants are not entitled to an "offset" for overtime "previously paid" (the claimed "double dipping") because *the Court found they paid no overtime*. Defendants' argument to the contrary defies credulity.

### III. CONCLUSION

Accordingly, the Court being sufficiently advised, **IT IS HEREBY ORDERED**:

1. The Court previously found that Plaintiff had proven his claims against Defendants brought pursuant to Section 7, the overtime provision, of the FLSA. [R. 130, pp. 19–34] Further, the Court **ADOPTS** the damages calculations (totaling $211,541.76) provided by Plaintiff concerning Plaintiff's Section 7 overtime claims, [R. 132, 132-1, 132-2], as the **FINDING OF THE COURT**. By separate order, judgment will be entered in favor of Plaintiff against Defendants on this claim.

2. The Court previously found that Plaintiff had proven his claims against Defendants brought pursuant to Section 11, the recordkeeping provision of the Act. [R. 130, pp. 17–19] By separate order, judgment will also be entered in favor of Plaintiff against Defendants on this claim.

3. With respect to Defendants' Motion for Judgment pursuant to Fed. R. Civ. P. 52(c) (contained within their Proposed Findings of Fact and Conclusions of Law, [R. 129]) the Court previously granted the Motion in part, as to the minimum wage claim under Section 6

of the Act, and denied it in part as to all other claims. [R. 130, p. 39] By separate order, judgment will also be entered consistent with this ruling.

4. Finally, in accordance with Section 17 of the Act, 29 U.S.C. § 217, the Court previously enjoined Defendants and their agents, servants, employees, and all persons in active concert or participation with them, from further violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. [R. 130, pp. 39–40] No additional orders are required in this issue.

This the 17th day of December, 2020.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:   Counsel of record