**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF KENTUCKY**

**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| JULIE A. SU,<br>Acting Secretary of Labor, United<br>States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>KDE EQUINE, LLC, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:15-CV-562-CHB |

**THE ACTING SECRETARY'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, the Acting Secretary of Labor, submits the following memorandum of law in support of her motion for summary judgment.

## I. Procedural History

This case arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. On June 25, 2015, the Secretary of Labor sued to recover back wages and liquidated damages for certain current and former employees of Defendants KDE Equine, LLC and Steve Asmussen (collectively "KDE."). ECF No. 1. This case was tried before the Honorable Claria Horn Boom on May 20-22, 2019, in Louisville, Kentucky. At the conclusion of the trial, the Court found that affected employees were owed back wages stemming from KDE's failure to pay overtime pursuant to 29 U.S.C. § 207. *See* Findings of Fact and Conclusions of Law, ECF No. 130. Thereafter, the Court entered judgment for the Secretary in the amount of $211,541.76. *See* Judgement, ECF No. 138.

In March 2018, while the case was before Senior Judge Charles R. Simpson, III, the Court granted KDE summary judgment on the issues of willfulness and liquidated damages.[1] *See* Memorandum Opinion and Order, ECF No. 74. After the Court issued its opinion following the bench trial, the Secretary appealed the adverse summary judgment findings. *See* Plaintiff's Notice of Appeal, ECF No. 145. The Sixth Circuit reversed the grant of partial summary judgment to KDE, holding that summary judgment should not have been granted to KDE on the issue of willfulness and liquidated damages. *Walsh v. KDE Equine, LLC*, 56 F.4th 409 (6th Cir. 2022). Specifically, the Court found "that the district court's grant of summary judgment on the willfulness issue in favor of KDE was inappropriate because genuine issues of material fact existed as to whether KDE willfully failed to pay its employees in compliance with the FLSA." *Id.* at 417. The Court then vacated "the judgment as to the willful and liquidated damages claims," noting that "liquidated damages are available for … willful violations of the FLSA's provisions. . ." *Id.*

Before the Court now are only the issues of whether KDE's conduct was willful and whether the Acting Secretary is entitled to liquidated damages. If the Court finds for the Acting Secretary on either or both of these issues, the Court would also need to determine the amount of damages owed to the affected employees. After a conference call with counsel following the remand from the Sixth Circuit, the Court advised the parties that it would entertain motions for summary judgment on the remaining issues. The Court requested that the parties file any such motions on or before May 22, 2023. ECF No. 154.

[1] This ruling limited the Secretary's recovery to a two-year period, rather than a three-year period, and it precluded the Secretary from obtaining liquidated damages.

## II. Summary Judgement Standard

Summary judgment should be granted if the evidence establishes there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court should construe the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"While the burden is initially on the moving party to show the absence of any genuine issues of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986), the nonmoving party must then present 'significant probative evidence' to 'do more than show that there is some metaphysical doubt as to the material facts' to defeat the motion, *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993)." *Ondo v. Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015). "The court may grant summary judgment if the [nonmoving party's] evidence is insufficiently probative to create a genuine issue of fact." *Id*. (*citing Anderson,* 477 U.S. at 249–50). In addition, where the nonmoving party does not address the moving party's assertion of a fact, the court may "consider the fact undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2).

## III. Argument

KDE was investigated by the U.S. Department of Labor ("DOL") for wage-and-hour violations in 2012. In January 2013, the U.S. District Court for the Eastern District of New York approved a consent judgment which, among other things, enjoined KDE from further violations of the record keeping and overtime provisions of the FLSA. Despite this injunction,

KDE did not change the offending features of its payroll practices, nor did KDE begin keeping accurate records of the hours that employees worked. In fact, the timesheets kept by KDE showed hours that KDE knew to be false. Even more, KDE's payroll showed the employee compensation broken into a "hourly" and "overtime" components, when, in fact, these numbers were also fabricated and bore no relation to the hours employees actually worked. Even after knowing what was required to comply with the FLSA, KDE never took the steps necessary to do so. As discussed more fully below, this behavior shows that KDE's violation of the FLSA was willful.

**A. From 2012 through, at least, the date of trial, KDE willfully violated the Fair Labor Standards Act.**

"Section 6(a) of the Portal-to-Portal Act, 29 U.S.C. § 255(a), provides that if an employer 'willfully' violates the FLSA, the statute of limitations is three years." *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 473-474 (6th Cir. 1999). If the violation is not willful, then the limitations period is two years. *Id*. Violations are willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985). If an employer was aware of the specific FLSA requirements from a prior Department of Labor investigation, the FLSA violations are willful. *Dole v. Elliott Travel & Tours*, 942 F.2d 962, 967 (6th Cir. 1991).

In the instant case, KDE's conduct was willful for at least three reasons: 1) in 2012, KDE had been informed by the DOL that the manner in which they paid their employees violated the FLSA, they agreed to a Consent Judgment, and were ordered to comply with the minimum wage, overtime and recordkeeping provisions of the FLSA; 2) KDE did not change the essential features of how employees were paid after the entry of the injunction; and 3) the steps KDE took after the injunction only served to conceal their ongoing lack of compliance.

**1. KDE did not change its payroll practices after being investigated by DOL in 2012 and after being enjoined by the U.S. District Court in 2013.**

The investigation in Kentucky which gave rise to this case was not KDE's first dealing with DOL. At the trial of this matter, Defendant Steve Asmussen testified that KDE was previously investigated by DOL in New York. *See* Trial Transcript, Vol. 1, at 92:8-10. In that investigation, DOL found that hotwalkers and grooms were not being paid overtime at Belmont Park.[2] *Id.* at 92:17-19. The hotwalkers and grooms were being paid a set amount regardless of how many hours they worked and extra compensation for specific tasks. *Id*. at 92:23-93:6.

At the conclusion of DOL's investigation in New York, KDE was informed of what they needed to do to comply with the FLSA going forward. *See* Case Summary, ECF No. 62-8, at 5-6. In addition, KDE was provided with various publications regarding FLSA compliance. *Id*. KDE's accountant, Pete Belanto, who continued to process the company's payroll following the New York investigation, was specifically informed of the violations that occurred in New York. *Id*. (noting that a final conference was held on October 3, 2012, at the Long Island District Office; "[a]ll violations were discussed in detail" with Mr. Belanto; and that "[t]he firm agreed to fully comply in the future with all applicable provision of the FLSA.").

In addition, KDE consented to the entry of an injunction after the investigation in New York. *See* January 24, 2013 Eastern District of New York Consent Judgment (the "Consent Judgment"), Joint Exhibit 4.[3] As a part of the Consent Judgment, KDE agreed to pay $29,095.97

---

[2] This investigation was different than a New York state investigation of KDE in 2015 which resulted in a $2,085.03 penalty. *See* ECF No. 67-20.

[3] Defendant Asmussen signed the Consent Judgment on December 10, 2012. *See* Joint Exhibit 4 at JE 00166.

in damages to the Secretary ($19,397.31 in back wages for failing to pay employees overtime compensation and $9,698.66 in liquidated damages). *Id.* at JE 00161. At the same time, KDE was "permanently enjoined and restrained from violating the provisions of sections 6, 7, 11(c), 15(a)(2), and 15(a)(5)" of the FLSA. *Id.* As particularly relevant here, the Consent Judgment specifically requires KDE to "pay employees at time and one-half their regular hourly rates for all hours worked over 40 per week." *Id.* at JE 00162. The injunction further requires KDE to "make, keep, and preserve adequate records of their employees and of the wages, hours, and other conditions and practices of employment maintained by them as prescribed by the regulations issued pursuant to Section 11(c) of the Act and found at 29 CFR Part 516."[4] *Id.* at JE 00162.

As this Court found, KDE did neither: the payment practices for hot walkers and grooms in New York prior to the injunction were identical to the payment practices for hot walkers in grooms in Kentucky during the time period covered by this lawsuit. *See* Findings of Fact and Conclusions of Law, ECF No. 130, at 3-7. In New York in 2012, and in Kentucky through the date of trial, KDE's employees were paid a salary for all the hours that they worked and additional payments for performing certain specified tasks. *See id*. at 4 (the Court discussing extra task payments for the period at issue in this lawsuit.) Despite previous enforcement by DOL, KDE's behavior never changed. The failure to change its pay practices after prior violations and the assurance of future compliance is highly indicative of willfulness. *See KDE Equine*, 56 F.4th at 416 (citing *Elliott Travel & Tours*, 942 F.2d at 967; *Palo Grp. Foster Home*, 183 F.3d at 474).

---

[4] These regulations require, inter alia, that the employer maintain records of "[h]ours worked each workday and total hours worked each workweek (for purposes of this section, a 'workday' is any fixed period of 24 consecutive hours and a 'workweek' is any fixed and regularly recurring period of 7 consecutive workdays)." 29 C.F.R. § 516.2(a)(7).

Absent extraordinary facts that are not present here, this conduct alone should be enough for the Court to find KDE's actions were willful. KDE had actual notice that its salary and task-payment plan was not FLSA compliant. As discussed above, KDE was told by DOL on October 3, 2012, that their pay practices were problematic, and, yet, they continued to compensate employees under this salary and task payment plan for at least another six years. KDE was under an even greater duty to follow the law because they were under a Court order. As discussed below, however, KDE's actions actually moved away from compliance following the injunction.

**2. KDE's post-injunction timesheets were only meant to simulate compliance with the FLSA.**

The one clear distinction in KDE's payroll practices before and after the injunction, according to KDE, was the implementation of timesheets. The Court, at the summary judgment stage, had even previously credited this change as bearing on KDE's lack of willfulness. Memorandum Order, ECF No. 74, at 20. When examined closely, though, KDE's timesheets reveal KDE's ongoing, knowing circumvention of the FLSA.

Pete Belanto did payroll for KDE both before and after DOL's New York investigation in 2012. *See* May 18, 2017 Deposition of Pete Belanto ("Belanto Dep."), ECF No. 61-8, at 15:4-8; 43:3-9. As part of those duties, Belanto was involved in the discussions with DOL in New York related to the investigation at Belmont Park. *Id*. at 43:3-9. Belanto was also aware of the injunction issued by the U.S. District Court for the Eastern District of New York. *Id*. at 42:18-23. Even with this knowledge, Belanto admitted that KDE did not change its offending payroll practices after the issuance of the New York injunction, but did institute timesheets:

> Q. Was there anything that you did differently after the injunction?
>
> A. Probably just tightened up a little bit to make sure we knew what we were doing.

Q. [W]hat does that mean?

A. Just making sure the time sheets were done, making sure that everybody was on the same page with the guaranteed minimum and making sure everybody was on the same page of anything done extra and over, making sure everybody got paid for taking a horse to the racetrack to race, hot walkers and grooms, just trying to make sure that everything was in conjunction with what was going on.

*Id*. at 43:10-44:1. Assistant Trainer Scott Blasi also testified that the only things that changed after the injunction was that KDE started keeping timesheets that the employees themselves filled out and that KDE placed required signs in their barns.[5] *See* Deposition of Scott Blasi ("Blasi Dep."), ECF No. 61-22, at 53:3-54:6.

The record is clear that the timesheets kept by KDE were wholly inaccurate and, more importantly, were never intended to be accurate. Rather than showing an affirmative step toward compliance with the FLSA, the timesheets demonstrate the opposite. Assistant Trainer Blasi testified at trial that he knew from other records that he kept that the timesheets were not accurate. Blasi, when questioned by his own counsel about one of the timesheets offered into evidence by the Secretary, stated, "[f]rom our time notes,[6] I would know this [timesheet] is horribly inaccurate." *See* Trial Transcript, Vol. 2, at 179:6-13. Blasi further testified that there may

[5] The Court found in its previous summary judgment order that the placing of the signs was relevant to the issue of willfulness. *See* Memorandum Opinion, ECF No. 74 at 21. The Acting Secretary respectfully disagrees. If anything, a sign which accurately explains an employer's obligations under FLSA would have indicated to KDE that it was *not* in compliance with the law. Furthermore, there is almost nothing about the posters in the record beyond Blasi's statement. KDE displaying posters, though, has no bearing on what it knew about paying its employees.

[6] In discovery, Defendants produced a single example of these "time notes." *See* Joint Exhibit 6. These "time notes" do not accurately reflect the hours worked by employees, either, referring instead to periods such as "two weeks." The Court discusses these time notes in its Findings of Fact and Conclusions of Law, ECF No. 130, at 6-7.

even be no timesheet at all in some instances: he did not feel like he needed to "bully" the employees into keeping timesheets because "it's just not necessary."[7] *Id.* at 179:14-21. Considering this, and other testimony, the Court found that the timesheets do not accurately show the number of hours that employees worked. Findings of Fact and Conclusions of Law, ECF No. 130 at 19 (noting that "it was abundantly clear from the testimony at trial … that the timesheets contained so many inaccuracies that they were essentially useless for payroll purposes.") It is undisputed, then, that: 1) the E.D.N.Y. injunction required KDE to keep accurate time records; 2) KDE began requiring employees to keep "timesheets" after the injunction; and 3) KDE knew that those timesheets did not accurately show the number of hours that employees actually worked.

KDE, in fact, did not and could not use the timesheets to prepare their payroll because the timesheets did not arrive at Pete Belanto's office in California in time for him to use them to process payroll for that pay period. *See* Belanto Dep., ECF No. 61-8, at 94:2-4; Findings of Fact and Conclusions of Law, ECF No. 130, at 7. Of course, it makes sense that KDE expended no effort to ensure the accuracy of the timesheets when the information on them would not be used for any purpose.[8]

Inaccurate as to hours worked by employees and unused for payroll purposes, the only purpose of these timesheets was to create a false façade—to make it appear that KDE was

[7] Blasi's excuse rings hollow, as he presents a false dichotomy between having the employees keep their own time sheets and having no timesheets at all. Among other solutions, KDE could have had one of the foremen keep the time records or required employees to use an electronic time clock. After all, according to Blasi, himself, he was keeping *some* form of record of employee attendance. This shows that KDE did not keep accurate time records because KDE did not want to keep accurate time records.

[8] The timesheets also could not be complete because they were sent to Belanto on Wednesday, so they necessarily could not include accurate hours for Thursday and Friday of the pay period. Findings of Fact and Conclusions of Law, ECF No. 130, at 7. It hardly matters, though, as all of the numbers on the timesheets were made up anyway.

keeping time records in compliance with the E.D.N.Y. injunction (and the FLSA) should KDE be investigated again for wage and hour violations. Lest KDE now argue differently, as late as summary judgment in this lawsuit, KDE argued that these timesheets accurately stated their employees' hours. *See* Defendants' Response to Plaintiff's Partial Motion for Summary Judgment, ECF No. 67, at 21 ("[S]ubstantially all of the employees confirmed that the hours listed on the time sheets were correct.") This argument alone undercuts any claim that the timesheets were not created for deceptive purposes. The timesheets were meant to simulate an aspect of compliance with the FLSA. If a company is not tracking employee hours, it is impossible to pay overtime as the FLSA requires. KDE knew this, ECF No. 62-8, p. 5 (noting that "Toby Sheets and Peter Belanto stated that the reason the violations occurred [in New York] is that time records were not correctly kept"), so they created the timesheets to cover up ongoing violations.

### 3. KDE's payroll records utilized a fabricated "hourly" and "overtime" designations and yet another set of fabricated hours.

As discussed above, KDE knew that the hours on its timesheets were inaccurate. The fabrication of hours, though, did not end with the timesheets. KDE attempted to further conceal violations by fashioning their *payroll* records in such a manner that suggests that employees are being paid overtime for hours worked in excess of 40 in a workweek. *See, e.g.,* Joint Exhibit 19 at JE 00640- JE 00641. These payroll records purport to show employees working and being compensated for "hourly" and "overtime" hours. For instance, for the pay period ending April 11, 2014, Roberto Carmona is shown working "80.00" next to the word "hourly" and "34.25" next to the word "overtime" at a rate of $8/hour. *Id.* at JE 00640. Carmona was paid $1,051 for this pay period. *See id.* at JE 00637. This amounts to $640 at his straight-time rate of $8/hour (80 hours x $8/hour) and $411 at his time-and-a-half rate (34.25 hours x $12/hour) for a total of $1,051

($640 in straight time + $411 in overtime). On these same records, KDE expressly designated some employees as being paid a salary. *See* Joint Exhibit 19 at JE 00636 (designating Jose A. Alfonso as "salary.") To the outside observer, these records give the appearance of compliance with Consent Judgment's injunction related to paying overtime in accordance with Section 7 of the FLSA—non-exempt employees appear from these records to be paid time and one-half their regular hourly rate for working more than 40 hours in a week.[9] The Court, however, has already found that this did not occur. *See* Findings of Fact and Conclusions of Law, ECF No. 130, at 3-8.

Adding even more confusion, the hours on the timesheets and the hours on the payroll records do not match for the same pay periods. Belanto testified that the hours on the timesheets and the hours on the payroll "should" not match. *See* Belanto Dep., ECF No. 61-8, at 46:6-8. Asmussen also testified that he would not be surprised if the hours on the timesheets never matched those shown on the payroll records. Trial Transcript, Vol. 1, at 70:3-8. The record is again clear that KDE kept two sets of records, each containing a different number of hours worked for the same pay periods, both aimed at giving the appearance of compliance with a different aspect of the Consent Judgment. Taken together, the import of these actions is clear: KDE preferred to pay its employees based on a "salary," regardless of the number of hours they worked, and continued to do so even after being enjoined by a federal court. Most critically, KDE knew it was not paying its employees based on the hours they actually worked because they failed, in every way, to accurately record the hours that employees worked.

[9] Since Belanto never received accurate timesheets, in essence, he made up the hours on the payroll to achieve the "guaranteed minimum" that employees were promised. *See, e.g.,* Belanto Dep., ECF No. 618-8, at 55:18-56:22.

**B. Liquidated damages should be awarded.**

The FLSA provides that an employer found to have violated its provisions "shall be liable" to the affected employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages are "compensation, not a penalty or punishment." *McClanahan v. Mathews*, 440 F.2d 320, 322–23 (6th Cir. 1971) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583 (1942)). The FLSA gives courts the discretion to decline to award liquidated damages "if the employer shows to the satisfaction of the court that the act or omission. . . was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. In other words, an award of liquidated damages is the norm. Courts may decline to award liquidated damages in exceptional circumstances "*if, and only if*, the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act." *Elliot Travel & Tours,* 942 F.2d at 967 (quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3rd Cir. 1982) (emphasis in original)). In the Sixth Circuit, courts are required to award liquidated damages for willful violations of the Act. *Palo Grp. Foster Home,* 183 F.3d at 474.

In this case, the violations are willful. *See* Section I, *supra*. Therefore, the Court should award liquidated damages. *See Palo Grp. Foster Home,* 183 F.3d at 474 ("Absent a good-faith disagreement with the authority of the government to promulgate the statute, a finding of willfulness is dispositive of the liquidated-damages issue.") Even if the Court were to find that the violations were not willful, the Defendants cannot establish that they acted in good faith or that they had reasonable grounds for believing that their pay practices complied with the FLSA—the notice of their obligations under the FLSA through the prior DOL investigation and injunction,

coupled with, at best, the intentional indifference toward paying employees hourly, mandates an award of liquidated damages in a case such as this. To prove good faith, an employer "must show that [it] took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3rd Cir. 1991). The Sixth Circuit has recognized that "[t]his burden on the employer is substantial." *Elwell,* 276 F.3d at 840. And in the Sixth Circuit, if an employer fails to show that it acted in good faith or fails to show that it had reasonable grounds for believing its pay practices were in compliance with the statute, the district court has "no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." *McClanahan,* 440 F.2d at 322.

### C. If the Court finds that the violations are willful, and that the three-year statute applies, an additional $31,718.37 in back wages and an equal amount of liquidated damages should be awarded.

The Court previously found that the hot walkers worked an average of 44.25 hours per week (or 88.5 hours per bi-weekly pay period) and that the grooms worked an average of 52.5 hours per week (or 105 hours per bi-weekly pay period). ECF No. 130 at 8-16. The Court ultimately awarded back wages totaling $211,541.76 for the period beginning on June 25, 2013, and ending on May 22, 2019. *See* ECF No. 138. These back wages were calculated using the Defendants' payroll records and the Court's factual findings regarding the number of hours that the employees worked. For the third year (*i.e.*, the period beginning on June 25, 2012, and ending on June 24, 2013), counsel for the Acting Secretary has calculated back wages totaling $31,718.37.[10] In the event that the Court finds that the violations are willful, and that the three-

[10] The Plaintiff used payroll records that the Defendants produced in this matter to calculate back wages for the third year. *See* Declaration of Anthony Martinez, attached hereto as Exhibit A, ¶ 2. In order to calculate damages, the Plaintiff used as similar methodology as was used initially. First, if the employee's gross pay was less than $641.63 in the bi-weekly pay period, the Plaintiff

year statute applies, $243,260.13 in back wages are due ($211,541.76 + $31,718.37). When this amount is doubled pursuant to the liquidated damages provision of the Act, 29 U.S.C. § 216(b), the total amount due and owing to the employees listed on Exhibit B to the Amended Complaint is $486,520.26. The Acting Secretary requests that the Court enter judgment in this amount.

## IV. Conclusion

For the foregoing reasons, the Plaintiff respectfully submits that summary judgment is appropriate in this case. The Plaintiff requests an order finding: 1) that the violations are willful (and the three-year statute of limitations applies); and 2) that liquidated damages should be awarded. Assuming there are no factual issues with the Plaintiff's back wage calculation, judgment should be entered in the Plaintiff's favor in the amount of $486,520.26.

Respectfully Submitted,

SEEMA NANDA
Solicitor of Labor

TREMELLE HOWARD
Regional Solicitor

SCHEAN G. BELTON
Associate Regional Solicitor

MATT S. SHEPHERD
Counsel for Wage and Hour

/s/ Thomas J. Motzny
THOMAS J. MOTZNY
Trial Attorney

U. S. Department of Labor
Attorneys for the Plaintiff

POST OFFICE ADDRESS:

Office of the Solicitor
U. S. Department of Labor
618 Church Street, Suite 230
Nashville, Tennessee 37219
Telephone: 615.781.5330
Fax No.: 615.781.5321
*shepherd.matt@dol.gov*
*motzny.thomas.j@dol.gov*
*nash.fedcourt@dol.gov*

---

did not calculate back wages for that employee. Second, the Plaintiff assumed the employee worked as a hot walker and worked a 44.25-hour week, as the Court previously found, if he or she made less than $900 in the pay period. If the employee made $900 or more, the Plaintiff assumed the employee worked as a groom and calculated damages based on a 52.5-hour week. Worksheets showing how the back wages were calculated for each employee are attached, as Exhibit B.

**CERTIFICATE OF SERVICE**

I certify that on April 26, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Thomas J. Motzny
THOMAS J. MOTZNY
U. S. Department of Labor
Office of the Solicitor
618 Church Street, Suite 230
Nashville, Tennessee 37219