**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: December 23, 2024

Mr. Clark O. Brewster
Mr. Mbilike Mwafulirwa
Brewster & De Angelis
2617 E. 21st Street
Tulsa, OK 74114-5725

Mr. James Michael Morlath
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Room N-2119
Washington, DC 20210

      Re:  Case No. 24-5309, *Julie Su v. KDE Equine, LLC, et al*
           Originating Case No. : 3:15-cv-00562

Dear Counsel,

    The Court issued the enclosed opinion today in this case.

    Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                              Sincerely yours,

                              s/Cathryn Lovely
                              Opinions Deputy

cc:  Mr. James J. Vilt Jr.

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0533n.06

Case No. 24-5309

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

FILED
Dec 23, 2024
KELLY L. STEPHENS, Clerk

| | )  |  |
|---|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| KDE EQUINE, LLC, dba Steve Asmussen Stables; STEVE ASMUSSEN, | ) ) ) | |
| Defendants-Appellees. | ) ) ) | OPINION |

Before: THAPAR, LARSEN, and READLER, Circuit Judges.

THAPAR, Circuit Judge. KDE Equine, a horse-training company, and its owner, Steve Asmussen, (collectively "KDE") violated the Fair Labor Standards Act ("FLSA"). KDE failed to pay the correct overtime wages to some of its Kentucky employees—including its "grooms," who dress and prepare horses for racing, and its "hotwalkers," who walk and bathe the horses to cool them down. The district court held as much after conducting a bench trial, and we affirmed in a prior appeal. *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 414 (6th Cir. 2022).

The remaining question is whether KDE's overtime violations were "willful."[1] 29 U.S.C. § 255(a). If they were, then the Department of Labor is entitled to a three-year statute of limitations

---

[1] The district court also determined that KDE had committed recordkeeping violations. *KDE Equine*, 56 F.4th at 412. But since recordkeeping violations don't qualify for the willfulness enhancement to the statute of limitations or for liquidated damages, our opinion addresses only the willfulness of KDE's overtime violations. 29 U.S.C. §§ 255, 255(a) (providing for three-year limitations period for "willful" violations arising out of causes of action for "unpaid minimum wages, unpaid overtime compensation, or liquidated damages," but not recordkeeping violations); *Acosta*

No. 24-5309, *Su v. KDE Equine, LLC*

instead of a two-year period for bringing an enforcement action. *Id.* This would enable the Department to recover damages for KDE's violations during the added year of the limitations period. What's more, a finding of willfulness would entitle the Department to liquidated damages under 29 U.S.C. § 216(b), since a willful violation could not have been committed "in good faith." 29 U.S.C. § 260; *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999).

An employer's FLSA violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *KDE Equine*, 56 F.4th at 415 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985)). Negligence alone cannot sustain a finding of willfulness. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). Accordingly, even if an employer's efforts to comply with the Act were unreasonable (but not reckless or knowingly deficient), a finding of willfulness is unwarranted. *Id.* at 135 n.13. Whether an employer has willfully violated the Act is a question of fact. *KDE Equine*, 56 F.4th at 416.

Originally, the district court granted summary judgment to KDE on the willfulness issue. The court held that, even viewing the record in the light most favorable to the Department of Labor, any violations by KDE were at most the result of negligence—not willfulness. The case was then transferred to a different district judge, who conducted a bench trial and concluded that KDE had violated the Act. That trial didn't address the willfulness issue, since KDE had already won summary judgment on that point.

On appeal, our court vacated the grant of summary judgment to KDE on willfulness. *Id.* We stated that "factual disputes" in the case raised "enough of a genuine issue of material fact to

---

*v. Min & Kim, Inc.*, 919 F.3d 361, 367 (6th Cir. 2019) (explaining that 29 U.S.C. § 216(c) permits liquidated damages only for minimum-wage and overtime violations, not recordkeeping violations).

- 2 -

No. 24-5309, *Su v. KDE Equine, LLC*

preclude summary judgment." *Id.* at 416. We remanded the case to the district court. But instead of proceeding to trial, the parties once again moved for summary judgment. And once again, the district court granted summary judgment—but this time, in favor of the Department of Labor. The court also awarded liquidated damages. KDE now appeals these decisions.

\* \* \*

In our previous opinion, we stated that "genuine issues of material fact existed as to whether KDE willfully failed" to comply with the Act. *Id.* at 417. These factual disputes, we held, were enough "to preclude summary judgment." *Id.* at 416. We continue to adhere to that belief.

Two district courts studied the same factual record but came to opposite conclusions. One court held that no reasonable factfinder could conclude that KDE's violations were willful; the other court held that no reasonable factfinder could conclude that KDE's violations were anything *other* than willful. In our view, this disagreement suggests that a trial is necessary. To resolve the competing versions of events, testimony must be taken; credibility determinations must be made; and facts must be found.

The legal dispute here turns on a contested factual question: KDE's state of mind when it violated the Act. It is difficult to assess a party's subjective mental state from a cold record, without the benefit of in-court testimony that enables the factfinder to make judgments about a witness's demeanor and credibility.[2] "Knowledge on the part of [a] company can be proved only by showing the state of mind of its employees," meaning that we should be "cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination

---

[2] It's true that the district court has already conducted a bench trial in this case. But as explained above, that trial focused only on whether KDE committed FLSA violations. It did not address the willfulness of those violations, since KDE had already won summary judgment on that point. Only after the trial did we vacate the first court's grant of summary judgment to KDE on the willfulness issue. Thus, there has not been a trial to determine the key factual question: whether KDE acted willfully. *KDE Equine*, 56 F.4th at 416.

- 3 -

No. 24-5309, *Su v. KDE Equine, LLC*

of state of mind." *Croley v. Matson Nav. Co.*, 434 F.2d 73, 77 (5th Cir. 1970) (Wisdom, J.). As Wright and Miller puts it, "a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ—a function traditionally left to the [factfinder]." 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2730. For that reason, summary judgment is "often" an "inappropriate means of resolving an issue of this character." *Id.*

That's especially true here, where the record contains no "smoking gun" evidence of any willfulness by KDE. For example, the parties have not directed us to any emails or text messages from KDE personnel showing that they knew they were committing FLSA violations. Thus, only by drawing factual inferences can a court make the logical jump from (a) the mere existence of a violation to (b) a party's mental state while committing that violation. And here, reasonable people could disagree about the validity of those inferences.

In concluding that KDE acted willfully, the district court leaned heavily on the fact that KDE had previously violated the same provisions of the FLSA at issue here. Back in 2013, KDE admitted that it had failed to pay proper overtime compensation to employees in New York. *KDE Equine*, 56 F.4th at 416. Then, in this case, KDE proceeded to violate the same provisions of the Act in Kentucky. In both cases, KDE's violation stemmed from its use of a "guaranteed pay plan" plus additional compensation for workers who performed additional tasks. Our prior opinion explained that KDE's prior violations could lead a reasonable factfinder to infer that KDE's current violations were willful. *Id.*

KDE doesn't dispute those facts. But in response, it points out that employers who have previously violated the Act—"even those previously investigated and given corrective guidance"—might still "unwittingly violate the wage and hour laws" in the future. Reply Br. at 6.

- 4 -

No. 24-5309, *Su v. KDE Equine, LLC*

That makes sense. The FLSA is complicated, and an employer who knows what the Act requires might still make a mistake in the future. Even if that mistake is careless, that's not enough to clear the high bar for willfulness. For this reason, our prior opinion rejected the notion that whenever an employer violates certain provisions of the Act, any future violations of the same provisions would automatically qualify as willful. *KDE Equine*, 56 F.4th at 415. Thus, while the prior New York violations are relevant to the willfulness determination, they do not compel a factfinder to conclude that the present Kentucky violations were willful.

Moreover, KDE has offered explanations for its violations that a reasonable factfinder could choose to believe, assuming it finds KDE's witnesses to be credible.

First, KDE points out that, in the wake of the New York violations, state and federal regulatory authorities assured KDE that it had successfully brought its New York operations into compliance with the FLSA. A Case Summary Report prepared by a Department of Labor investigator in New York states that, as of 2013, KDE "ha[d] come into compliance" with the FLSA. R. 62-8, Pg. ID 1606, 1608. The document adds that KDE had "designed an accurate time keeping" method and was "paying T1/2" (i.e., time-and-a-half overtime compensation). *Id.* at Pg. ID 1608. Then, in 2015, the New York State Department of Labor inspected KDE's New York operations and concluded that KDE "was in compliance with" certain New York state labor laws (although it also concluded that KDE had failed to furnish some required state-law notices). R. 67-20, Pg. ID 1; R. 129-4, Pg. ID 7208–09. What's more, both KDE's owner (Steve Asmussen) and its accountant (Pete Belanto) testified that state and federal regulators had approved of KDE's updated New York payment scheme.

These alleged assurances are relevant to KDE's state of mind during the Kentucky violations. A deviation from previously approved practices doesn't necessarily demonstrate

- 5 -

No. 24-5309, *Su v. KDE Equine, LLC*

willfulness, since the deviation, even if objectively unreasonable, could have been a mistake. At trial, the factfinder should determine whether state[3] and federal regulators did in fact approve of KDE's New York operations and, if so, how those assurances affected KDE's state of mind during the present violations. If KDE genuinely believed that the practices it adopted here were similar to the practices deemed "compliant" by the state and federal authorities, then KDE's violations couldn't have been willful.

At the summary judgment stage, however, the district court discounted all this evidence. As for the New York State Department of Labor's alleged approval of KDE's updated New York practices, the district court asserted that it could "find no evidence in the record to support this claim"—despite the evidence and testimony described above. R. 164, Pg. ID 8430. Then, invoking its role as "the finder of fact" at the earlier bench trial, the Court criticized Asmussen's testimony as "vague." *Id.* The court also appeared to make a credibility judgment about Asmussen's testimony when it invoked the rebuttal testimony of Elaine Guzzo—which, in the court's view, was a more plausible account of the facts. *Id.* But a court may not find facts or make credibility judgments at the summary-judgment stage. And here, a reasonable factfinder could choose to credit KDE's version of events.

The district court also gave little weight to the Case Summary Report. The court cited testimony from Elaine Guzzo, the investigator who prepared the report. *Id.* at Pg. ID 8431. At the earlier bench trial—which did not address the willfulness issue now before us—Guzzo testified that when she wrote that KDE "ha[d] come into compliance" with the Act, she meant that KDE

---

[3] New York's state labor law is "substantial[ly] similar[]" to the federal Fair Labor Standards Act. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015). It "mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime." *Id.* at 359 (citation omitted). For that reason, any assurances by New York's state Department of Labor that KDE had come into compliance with state labor law would be highly relevant to KDE's alleged belief that it was also complying with *federal* labor law.

No. 24-5309, *Su v. KDE Equine, LLC*

had merely *agreed* to come into compliance with the Act. *Id.* (citing R. 125, Pg. ID 6872–74). In the summary-judgment decision before us now, the district court said that it found Guzzo's testimony to be "highly credible." *Id.* The court further invoked its role as "finder of fact at the bench trial" to conclude that "it is clear" that "on this record, the Department never told KDE that the practices at issue were compliant with the Act." *Id.* These passages reveal that the district court made impermissible credibility determinations and factual findings at the summary-judgment stage. Indeed, the findings of fact that the district court made after the earlier bench trial don't mention Guzzo or her case summary report. *See* R. 130; *see also* Fed. R. Civ. P. 52(a)(1) (requiring a court to "find the facts specially" after a trial). After a trial focused on the willfulness issue, a factfinder *could* choose to credit Guzzo's testimony. But the factfinder could also choose *not* to credit that testimony. Moreover, there's no telling how Guzzo's testimony might have developed under cross-examination if willfulness had been a relevant legal issue at the earlier trial.

In sum, a trial is needed to resolve disputed factual questions about whether KDE received assurances from regulators that its New York operations had come into compliance with state and federal labor law and, if so, how those assurances affected KDE's mental state during the violations that gave rise to this case.

Second, after the New York violations, KDE implemented a practice of keeping timesheets in Kentucky. KDE says that its introduction of timesheets shows that it made genuine efforts to comply with the Act. Rejecting this argument, the district court pointed to its prior factual finding that the timesheets were "horribly inaccurate." R. 164, Pg. ID 8424. The district court also cited accountant Pete Belanto's testimony that he didn't use the timesheets to calculate paychecks. From there, the district court inferred that KDE must have introduced the timesheets to cover up its violations by "[s]imulating compliance" with the Act. *Id.* at Pg. ID 8425. In our prior opinion,

- 7 -

No. 24-5309, *Su v. KDE Equine, LLC*

we explained that this was a *possible* inference that a factfinder could draw. *KDE Equine*, 54 F.4th at 417. But we didn't conclude that this was the *only* reasonable inference a factfinder could draw. *See id.*

On the contrary, a reasonable factfinder could conclude that KDE's introduction of timesheets did reflect a genuine effort to comply with the FLSA—an effort that was ultimately stymied by laziness on KDE's part, ineffective monitoring of the timesheets' accuracy, literacy challenges among KDE's employees, or some combination of those factors. Indeed, in *Acosta v. Min & Kim, Inc.*, we held that a district court didn't abuse its discretion in concluding that an employer's violations were committed in good faith, even though the employer kept no records of the hours that employees worked. 919 F.3d at 363, 367. *Min & Kim* forecloses the notion that, whenever an employer keeps inaccurate records (or no records), any resulting violations are necessarily willful. *Id.*

Third, the factfinder should determine the nature of KDE's reliance on its accountant, Pete Belanto. KDE claims it couldn't have acted willfully because it relied on an experienced accountant to bring it into compliance with the Act. KDE invokes *Hoffman v. Professional Med Team*, which held that an employer's consultation with an outside party (there, an attorney) was evidence that the employer hadn't willfully violated its legal obligations. 394 F.3d 414, 419 (6th Cir. 2005); *see also Min & Kim*, 919 F.3d at 367 (explaining that an employer "acted in good faith" by "consulting with and relying on an accountant" about a guaranteed-wage plan like the one KDE used here). After discussing *Hoffman* and other cases, the district court asserted that "the factual record in this case does not support KDE's position that it incorrectly assumed that the pay plan developed by Belanto complied with the FLSA." R. 164, Pg. ID 8428. But to support that proposition, the district court needed to make a factual finding about KDE's state of mind when it

- 8 -

No. 24-5309, *Su v. KDE Equine, LLC*

arranged for Belanto to conduct its accounting. If KDE knew that Belanto would adopt the same unlawful practices as before, that would support a finding of willfulness. But if KDE genuinely believed that Belanto had adopted plans that complied with the Act, then that would cut against a finding of willfulness.

In sum, the ultimate question is a factual one: Did KDE subjectively know, or knowingly disregard a risk, that it was violating the FLSA? The current factual record doesn't compel an answer to that question. No matter how objectively unreasonable KDE's behavior might seem, KDE did not act willfully unless it acted with the required subjective mental state. *Richland Shoe Co.*, 486 U.S. at 135. Thus, when viewing the facts in the light most favorable to KDE (as we must), a reasonable factfinder could conclude that KDE's violations weren't willful. *See KDE Equine*, 56 F.4th at 417 ("[G]enuine issues of material fact exist[] as to whether KDE willfully failed to pay its employees in compliance with the FLSA."). Accordingly, we vacate the district court's grant of summary judgment to the Department of Labor on the willfulness issue. We also vacate the award of liquidated damages, since whether KDE committed its violations "in good faith" and with "reasonable grounds" turns on the same factual disputes described above. *See* 29 U.S.C. § 260. We remand the case for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-5309

JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,

    Plaintiff - Appellee,

v.

KDE EQUINE, LLC; STEVE ASMUSSEN,

    Defendants - Appellants.

> **FILED**
> Dec 23, 2024
> KELLY L. STEPHENS, Clerk

Before: THAPAR, LARSEN, and READLER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk